Samuel B. WELLS, Donald Harris et al., Plaintiffs,

v.

Fred HAND, Jr., individually and as Solicitor General, Albany Judicial Circuit, et al., Defendants.

Civ. A. No. 821.

United States District Court
Middle District Georgia,
Albany Division.

Feb. 24, 1965.

C. B. King, Albany, Ga., Charles H. Jones, Jr., New York City, for plaintiffs.

Hilliard P. Burt, H. G. Rawls, Albany, Ga., Albert Sidney Johnson, Asst. Atty. Gen., Atlanta, Ga., for defendants.

Before BELL, Circuit Judge, and BOOTLE and ELLIOTT, District Judges.

ELLIOTT, District Judge:

In attempting to make an arrest of a Negro man on August 15, 1964 a member of the City Police force of the City of Albany, Georgia fired a shot which resulted in the death of the man sought to be arrested. Neither the Plaintiff Wells nor the Plaintiff Harris witnessed this incident, but, based on "reports" which they heard concerning the

matter, they concluded that the officer was guilty of "murder" and they decided that they would do something about it. During that afternoon they prepared two handbills and distributed them widely in the Negro community in the City of Albany. The first handbill was as follows:

"ALBANY POLICE HAVE MURDERED ANOTHER NEGRO!

THIS AFTERNOON ANOTHER ONE OF PRITCHETT'S GUNMEN SLAUGHTERED A NEGRO MAN, WILBERT JONES, OF FRONT STREET.

THIS BLACK MAN, LIKE THE LONG LIST OF OTHERS KILLED BY PRITCHETT'S MURDEROUS MOB...INCLUDING ONE GUNNED DOWN TWO WEEKS AGO IN C.M.E....PLUS HARRIS, ASBURY, MILLER AND OTHERS, WAS UNARMED AND IN NO WAY BREAKING THE LAW WHEN HE WAS SHOT-GUNNED IN THE BACK.

TONIGHT IS THE TIME TO ACT

BLACK MAN**AREN'T YOU TIRED OF GOING TO FUNERALS? AREN'T YOU READY TO ACT?

BE AT EUREKA BAPTIST CHURCH**IN HARLEM**ON JACKSON STREET AT 8:00 TONIGHT

BE AT EUREKA BAPTIST CHURCH
TONIGHT IN HARLEM

JACKSON ST. NEXT TO GILES 8:00 p. m."

(The Pritchett referred to is the Chief of Police in Albany.)

The other handbill was in this fashion:

"ALBANY POLICE HAVE MURDERED ANOTHER NEGRO!

ALBANY POLICE HAVE KILLED TOO MANY NEGROES...
 ... REMEMBER HARRIS?
 ... REMEMBER ASBURY?
 ... REMEMBER MILLER?

2 WEEK AGO A NEGRO WAS SHOT IN THE BACK IN CME ...

IT IS TIME TO ACT!

BE AT EUREKA BAPTIST CHURCH
TONIGHT IN HARLEM

JACKSON ST. NEXT TO GILES 8:00 P.M."

In response to the urging of the handbills a crowd gathered at the street corner near the Baptist Church mentioned at the appointed hour of 8:00. This was on Saturday night near the center of what is known as "Harlem" and in an area where there is normally considerable pedestrian and automobile traffic and at a time when a street corner orator would be likely to attract attention. The Plaintiff Wells rented a microphone and loud speaker and addressed the crowd assembled, which he estimated to be between 200 and 300 persons. The gist of his speech was to remind the crowd of the details of what he considered to be police atrocities against members of the Negro race and his remarks were in the same general tone as suggested by the handbills previously distributed. He urged the crowd to do something about it and he stated that he had prepared a petition which he was going to present to the Chief of Police at the City Hall and that he was going to march from the meeting place down to the City Hall for that purpose, and he invited the crowd to go with him. He then set out on foot to march to the City Hall and a considerable number of his audience, being thus agitated and urged, proceeded to go with him. From the evidence it is difficult to determine with any degree of certainty how many there were in this throng, but it is clear that the number was sizeable. The Plaintiff Wells led the march and the Plaintiff Harris brought up the rear. Being thus shepherded the multitude set out for the City Hall, which was some blocks away. As might be expected, the march was attended by considerable commotion, and before reaching the announced destination bottles, stones and bricks were being hurled, plate glass windows in business establishments were being knocked out, citizens were being threatened and the peace and security of the entire area through which the procession was passing was being disrupted. There is no evidence that the Plaintiffs Wells and Harris committed any of these acts of violence but it is clear that the acts were being committed by those marching with them or by sympathizers accompanying the marchers. After having proceeded some distance on the way the Plaintiff Wells and the Plaintiff Harris decided for some reason to go back to the original meeting place and make the trip by automobile and this they did with a small group. After they withdrew, acts of vandalism and looting were widespread in the area into which the crowd had been led and these acts were directed toward business establishments either owned or operated by white persons. Principal victims were a jewelry store, a liquor store, a loan company, a drug store and a bus station. Physical damages amounted to several thousand dollars. It was not until some two and a half hours later that a semblance of order was restored in that section of the community. A number of arrests were made for burglary, looting, assaults and related offenses. In the meantime Plaintiffs Wells and Harris, together with a small group, had gone to the City Hall where the Police Headquarters are located to present their written complaint to the Chief of Police, Mr. Pritchett. They learned that the Chief was out of town and they presented their complaint to the Assistant Chief, Mr. Summerford. He received the complaint and stated to the group that he would hand it to Chief Pritchett upon his return to the city. It was during the time when the Plaintiffs Wells and Harris were in conference with the Assistant Chief that the reports began coming in to headquarters concerning the damage and looting in the area from whence the Plaintiffs had recently come and the Assistant Chief inquired of Wells and Harris whether their group was responsible for that activity. The Plaintiffs disavowed any responsibility in the circumstances.

Based upon subsequent investigation the Chief of Police, Mr. Pritchett, made affidavit before G. S. Thornton, Justice of the Peace, that a warrant might issue for the arrest of the Plaintiff Wells

for violation of § 26–902 of the Georgia Code, attempting to incite insurrection, and also for violation of § 26–904 of the Georgia Code, charging him with circulating insurrectionary papers.[1] By virtue of the warrant so issued the Plaintiff Wells was taken into custody and he was detained for thirteen days without bond, the offense described in § 26–902 being a non-bailable offense. Upon investigation, the Solicitor General, Mr. Hand, who would be the state prosecutor of the offenses, concluded that the Plaintiff Wells could not be prosecuted under § 26–902 and he directed that the Plaintiff Wells be released from any charge under that section, whereupon the Plaintiff Wells was released on $2,500.00 bond with respect to the charge pending against him under the provisions of § 26–904. No charge has ever been made against the Plaintiff Harris for violating § 26–902. He has been charged by warrant with violating § 26–904 and bond has been set at $2,500.00. The Plaintiff Harris has never been taken into custody under this warrant, so the Plaintiff Harris has never been jailed and the Plaintiff Wells has not been in custody since August, 1964. As heretofore indicated, all of the matters related took place in August, 1964.

On September 15, 1964 the Plaintiffs filed the complaint which is now before us under the provisions of Title 42 U.S.C. §§ 1971, 1981 and 1983, by which they sought to have a three-judge district court convened pursuant to Title 28 U.S.C. §§ 2281 and 2284. By subsequent amendment Plaintiffs also invoked the provisions of Title 28 U.S.C. § 1343(3) and (4).

This complaint as originally filed contained a number of allegations for which there is no support in the record and joined a number of defendants who have since been stricken as parties. Originally the Mayor and all of the members of the City Council of the City of Albany were named as parties defendant. The City of Albany itself as a body corporate was also named a party defendant. The Sheriff of Dougherty County was also named. No evidence of any nature connected these defendants with the matter under consideration and the City of Albany and the Mayor and the several members of the City Council were stricken as parties Defendant on motion of the Defendants and the Sheriff of Dougherty County was stricken as a party Defendant on motion of the Plaintiffs. One additional Defendant, Billy L. Manly, Captain of Detectives, was added by amendment to the original complaint. The Defendants remaining in the case are Fred Hand, Jr., Solicitor General of the Albany Judicial Circuit,[2] G. S. Thornton, Justice of the Peace in Dougherty County,[3] Laurie Pritchett, Chief of Police of the City of Albany and Billy L. Manly, Captain of Detectives in the Albany Police Department. As originally filed, the complaint prayed for an injunction to issue restraining the Defendants "from denying plaintiffs, or members of the class on whose behalf plaintiffs sue, the right to participate in the solicitation, promotion, and encouragement of others to register and vote".

---

1. "§ 26–902. *Attempt to incite insurrection.*—Any attempt, by persuasion or otherwise, to induce others to join in any combined resistance to the lawful authority of the State shall constitute an attempt to incite insurrection."
"§ 26–904. *Circulating insurrectionary papers.*—if any person shall bring, introduce, print, or circulate, or cause to be introduced, circulated, or printed, or aid or assist, or be in any manner instrumental in bringing, introducing, circulating, or printing within this State any paper, pamphlet, circular, or any writing, for the purpose of inciting insurrection, riot, conspiracy, or resistance against the lawful authority of the State, or against the lives of the inhabitants thereof, or any part of them, he shall be punished by confinement in the penitentiary for not less than five nor longer than 20 years."

2. We judicially notice the fact that Mr. Hand no longer holds office as Solicitor General of the Albany Judicial Circuit.

3. We judicially notice the fact that Judge Thornton is now deceased.

784

It also asks this Court's injunction to restrain the Defendants "from denying plaintiffs, and the members of their class the right to conduct peaceful public assemblies, or meetings to protest against state-enforced segregation, or any unlawful, unwarranted or arbitrary abuses of state power".

Upon the hearing on this matter no evidence whatever was presented showing any denial on the part of these Defendants, or anyone else for that matter, of the right of the Plaintiffs to participate in political activities, including the right to register and vote, and at no time during the hearing was any evidence offered or any suggestion made that there was any issue of segregation of the races involved here. This leads us to conclude that these allegations were either made carelessly or for the purpose of window dressing, and no further consideration will be given to those contentions.

The only matter of substance in this case is the contention made by the Plaintiffs that Georgia Code §§ 26–902 and 26–904 are unconstitutional and that all of these Defendants were well aware of that fact, but nevertheless the Defendants entered into an "overt scheme and plan", "acting in concert", to deprive the Plaintiffs of their constitutional rights and privileges, using these statutes for that purpose.

Assuming the burden of proving this contention, the Plaintiffs' ask that this Court enjoin the Defendants from further enforcement of these statutes and from further prosecution of the criminal actions against the Plaintiffs Wells and Harris based upon the warrants issued as heretofore described.

 It appears to be conceded by all concerned that no prosecution may be had under Georgia Code § 26–902 in the light of the decision by the United States Supreme Court in Herndon v. Lowry, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937), but the evidence before us would not justify a finding that the Defendants were well aware of that

decision and nevertheless entered into a scheme between themselves to cause an arrest to be made for the purpose of depriving the Plaintiff Wells of his constitutional rights. The Chief of Police who swore out the warrant based on Code § 26–902 against Plaintiff Wells may have had some information concerning the invalidity of that Code Section, but he is not a person versed in the law and it would require speculation on our part to conclude that his action in using an invalid statute was with deliberate intent to deprive the person arrested of some constitutional right. The Defendant Manly simply made an investigation in his capacity as Chief of Detectives and the Justice of the Peace, Judge Thornton, issued the warrant in the same routine fashion in which warrants are usually issued by a Justice of the Peace and the Defendant Hand, the Solicitor General, is not shown to have even had any connection with the matter until several days after the warrant had been issued when it became a state court concern, and when he determined that § 26–902 had been held to be unconstitutional he directed that the charges pending against the Plaintiff Wells based upon § 26–902 be abandoned, and subsequently he caused the Grand Jury to return a no-bill in that connection. As soon as the Solicitor General advised Mr. Pritchett that proceedings could not be had under § 26–902 the Police Chief abandoned any thought of further prosecution and the Plaintiff Wells was released from custody. All of this was accomplished before this complaint was filed and none of these circumstances indicate to us the existence of a scheme or a plan among these Defendants as charged in the complaint. Further, during the course of the hearing on this matter Chief Pritchett testified that he had no intention of making any further arrests based upon § 26–902, and Solicitor General Hand has made it clear to this Court from the inception of this matter that he has no intention of prosecuting any such case. It is apparent that this Court's injunction to restrain these De-

fendants, or any of them, from the further use of § 26–902 is neither necessary nor needed.[4]

With regard to the charges pending against the Plaintiffs Wells and Harris based upon the alleged violation of Georgia Code § 26–904, we are asked by the Plaintiffs to enjoin further prosecution in the state court based on this Code Section on the ground that this section is also unconstitutional. The theory of the Plaintiffs is that § 26–904 is related to § 26–902 and since § 26–902 is unconstitutional it, therefore, follows that § 26–904 is likewise invalid. We do not think that this necessarily follows. It is true that both of these sections relate to the subject of "insurrection", but these Code sections were not enacted at the same time as companion measures, they do not prescribe the same penalties and § 26–904 embraces matters not dealt with by § 26–902.

Under the provisions of § 26–904 prosecution can be had for matters having to do with subjects other than insurrection and the offense is not simply the circulating of papers but the doing of those acts for the purpose of inciting insurrection, *riot, conspiracy or resistance against the lawful authority of the state, or against the lives of the inhabitants thereof*. Assuming a properly prepared indictment under this section, the prosecutor would only have to prove the purpose of inciting *one* of those proscribed activities. It could be simply *riot*. It is true that the warrant which was issued in these cases by the Justice of the Peace refers to "insurrectionary papers" by which it is claimed the Defendants "attempted to incite insurrection", but in Georgia the true character of a criminal accusation or indictment is not fixed by the denomination of the crime given to it by the pleader, but rather by the particular allegations of the indictment, that is to say, the name which is given to the crime which is charged in the accusation or indictment does not characterize the offense but the nature of the crime is determined from the description of the crime alleged to have been committed. Owens v. State, 92 Ga.App. 61, 87 S.E.2d 654; Brusnighan v. State, 86 Ga.App. 340, 71 S.E.2d 698. Neither of these Plaintiffs has yet been indicted by the Grand Jury. If they are indicted that part of the indictment which would ultimately control would be the factual allegations set out in support of the alleged violation of the statute and that portion of the indictment could just as well establish a charge of inciting a riot as inciting to insurrection. This Court at this stage of this matter refrains from expressing any view concerning the constitutionality of Georgia Code § 26–904, having in mind that a presumption of constitutionality attaches to all state statutes and if any state of facts reasonably can be conceived that will sustain the statute as against an alleged violation of the federal Constitution the existence of that state of facts must be presumed. Spahos v. Mayor, etc. of Savannah Beach, 207 F.Supp. 688 (D.C.Ga., 1962), affirmed 371 U.S. 206, 83 S.Ct. 304, 9 L.Ed.2d 269.

Even if it should ultimately be determined that Georgia Code § 26–904 as applied to these Plaintiffs is unconstitutional, the Plaintiffs are not without adequate remedy and protection short of the issuance of this Court's injunction. Federal courts of equity have traditionally been loathe to restrain criminal proceedings in the state courts even on constitutional grounds when all of the constitutional issues can be decided in the first instance as a matter of course by the state courts. Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). In the absence of an affirmative showing to the contrary this Court cannot anticipate erroneous action by the state trial and appellate courts and we should not do so for considerations of both law and policy, the policy referred to being the desira-

4. The facts recited in this memorandum opinion are to be considered as findings of fact within the meaning of Rule 52, F.R.Civ.P.

bility of avoiding wherever possible conflicts between the state and federal judicial systems.

"Ordinarily, there should be no interference with such (state) officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is to be done. The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection. The Judicial Code provides ample opportunity for ultimate review here in respect of federal questions. An intolerable condition would arise, if, whenever about to be charged with violating a state law, one were permitted freely to contest its validity by an original proceeding in some federal court." Fenner v. Boykin (1926), 271 U.S. 240, 243, 46 S.Ct. 492, 493, 70 L.Ed. 927.

There has been no showing here that these Plaintiffs will not be afforded adequate protection with respect to their contentions in the state court. As already noted, the alleged invalidity of a state law is not of itself grounds for equitable relief in a federal court. The controlling question is whether the Plaintiffs have made a sufficient showing that the need for equitable relief by injunction is urgent in order to prevent great and irreparable injury. American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873 (1946). The injunctive relief sought in this complaint against the enforcement of a state penal statute, even if that statute is contrary to the federal Constitution, must be measured by the extraordinary circumstances rule and considerations of whether the danger of irreparable loss is both great and immediate. The mere fact that the Plaintiffs may be convicted in the state court does not create such extraordinary circumstances as would justify an injunction and it has been

frequently held that a federal court should not ordinarily interfere with state officers charged with the duty of prosecuting offenders against state law.

"That equity will stay its hand in respect to criminal proceedings, always when they are pending, and ordinarily when they are threatened, is a rule of wide and general application under our legal system. * * It is a principle expressing a sound policy that the processes of the criminal law should be permitted to reach an orderly conclusion in the criminal courts where they belong." Ackerman v. International Longshoremen's & Warehousemen's Union, 187 F.2d 860, 868 (9 Cir., 1951), cert. den. 342 U.S. 859, 72 S.Ct. 85, 96 L.Ed. 646.

 There are no circumstances in this case which create a great and immediate danger of irreparable loss to the Plaintiffs Wells and Harris. Neither of them is being held without bond, neither of them is in jail, neither of them is without remedy in the state court, neither of them has been deprived of any right of defense in the state court. Indeed, there is no showing that either of them will be damaged in any way beyond the normal concomitants of a criminal prosecution. The plaintiffs simply desire that this Court determine a constitutional question which, in the view of this Court, should be first considered by the state court.

We note that the Plaintiffs suggest that although the Plaintiff Wells is free from custody on a $2,500.00 bond, his bondsman might surrender him, and that although the Plaintiff Harris has never been arrested, if he were arrested he might be unable to make a bond in the amount of $2,500.00, and in the event these things happened this would result in the Plaintiffs being held in jail pending the determination of the legal issue which they raise concerning the constitutionality of the applicable statute. The possibility of this happening can be minimized by a reduction in the bonds required of Wells and Harris to a lesser

figure than that now assessed by the state authorities.

Accordingly, and for the reasons indicated, all of the prayers for injunctive relief are denied, provided the Defendants or their successors in office shall accomplish a reduction in the bonds assessed in the case of the Plaintiff Wells to an amount not exceeding $1,000.00 and in the case of the Plaintiff Harris to an amount not exceeding $1,000.00.