266 F.Supp. 564 (1967)
William WARE et al., Plaintiffs,
v.
M. L. NICHOLS et al., Defendants.
No. GC6511.
United States District Court N. D. Mississippi, Greenville Division.
February 8, 1967.
*565 Carsie A. Hall, Jack H. Young, R. Jess Brown, Jackson, Miss., Henry M. Aronson, Jack Greenberg, James M. Nabrit, III, Steve Ralston, Michael Meltsner, Melvyn Zarr, New York City, for plaintiffs.
James T. Bridges, Belzoni, Miss., Peter M. Stockett, Jr., Special Asst. Atty. Gen., State of Mississippi, for defendants.
Before WISDOM and COLEMAN, Circuit Judges, and CLAYTON, District Judge.
PER CURIAM.
The eight plaintiffs in this action are Negro citizens residing in Belzoni, Mississippi. They are affiliated with the Council of Federated Organizations as voter registration workers. Each was arrested in October 1964 and charged with the offense of criminal syndicalism, under the Mississippi Criminal Syndicalism Act of June 11, 1964, Mississippi Code Annotated, §§ 2066.5-01 to 2066.5-06 (1964 Supp.).[1] In this action the *566 plaintiffs, individually and on behalf of those similarly situated, ask the Court for a summary judgment declaring the Act unconstitutional on its face and as applied. They contend that it violates their constitutional rights of freedom of speech, assembly, and petition; that it is unconstitutionally vague and overbroad. The plaintiffs also invoke the equitable powers of the Court and ask that certain state and county officials be enjoined from enforcing the Act. They allege that the Court has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. §§ 1971 and 1983.

I.
The defendants rely, first, on the abstention doctrine, contending that this Court should abstain from deciding this case until the Supreme Court of Mississippi has construed the Criminal Syndicalism Act. In the circumstances this case presents, the abstention doctrine is inappropriate. As the Supreme Court *567 said in Dombrowski v. Pfister, 1966, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22:
We hold the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette [319 U.S. 157, 63 S. Ct. 877, 87 L.Ed. 1324], statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities.
See also Cameron v. Johnson, S.D.Miss. 1964, 244 F.Supp. 846, rev'd, 1965, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715, involving the constitutionality of the Mississippi Anti-Picketing Statute (Section 2318.5, Mississippi Code 1942-1964 Supp.). In that case the district court abstained; the Supreme Court reversed and remanded for the district court to determine whether Section 2283 was a bar and, if not a bar, whether the relief sought was proper in light of the criteria set forth in Dombrowski.

II.
The Mississippi Criminal Syndicalism Act on its face unconstitutionally abridges the freedoms of speech, press, and assembly. The Act declares that it is a felony when any person "advocates * * * [or] teaches * * * the doctrine * * * of effecting any political or social change" by "unlawful acts".
It is now settled that the First Amendment, carried over into the Fourteenth Amendment by the due process clause, protects the advocacy of teaching abstract Communist theory. Thus, in Noto v. United States, 1961, 367 U.S. 290, 297, 81 S.Ct. 1517, 1521, 6 L.Ed.2d 836, the Supreme Court held:
We held in Yates, and we reiterate now, that the mere abstract teaching of Communist theory, including the teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.
See Yates v. United States, 1957, 354 U. S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356; Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629.
The Supreme Court warned in NAACP v. Button, 1963, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed. 405:
"[P]recision of regulation must be the touchstone in an area so closely touching our most precious freedoms. * * Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. * * * A vague and broad statute lends itself to selective enforcement against unpopular causes." 371 U.S. at 433, 83 S.Ct. at 338.
More recently, the Court has repeated the language in Button that the "threat of sanctions may deter * * * almost as potently as the actual application of sanctions", and has observed that the "danger of that chilling effect upon the exercise of vital First Amendment rights must be guarded against by sensitive tools which clearly inform teachers what is being sanctioned". Keyishian v. Board of Regents, supra.
In Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377, the Supreme Court held that a state statute requiring state employees to take an oath as a condition of employment that they were not "subversive" persons denied due process because it was unduly vague, uncertain, and overbroad. The court described the oath in the following terms:
A teacher must swear that he is not a subversive person: that he is not one who commits an act or who advises, teaches, abets or advocates by any means another person to commit or aid in the commission of any act intended to overthrow or alter, or to assist the overthrow or alteration, of the constitutional form of government by revolution, force or violence. 377 U.S. at 360, 84 S.Ct. at 1327.
*568 The Court found the oath "lacking in terms susceptible of objective measurement" (377 U.S. at 367, 84 S.Ct. 1316).
In Dombrowski v. Pfister, the Court struck down the Louisiana Subversive Activities and Communist Control Acts for vagueness, saying:
Where, as here, protected freedoms of expression and association are similarly involved, we see no controlling distinction in the fact that the definition is used to provide a standard of criminality rather than the contents of a test oath.
The statute here purports to reach speech of a character beyond the sphere of criminal incitement. Thus the Act makes it a felony to suggest the propriety of the Communist doctrine, § 2(1); to attempt to justify the doctrine, § 2(2); to publish a book containing the doctrine, § 2(3); to assemble with persons assembled to teach the doctrine, § 2(4); to commit any act advised by the doctrine, § 2(5); to be present at any assemblage assembled for the purpose of suggesting the doctrine, § 3; or to permit the assembly of persons violating section 4. Under this law, we may ask, as the Court asked in Keyishian: "Does the teacher who carries a copy of the Communist Manifesto on a public street thereby advocate criminal anarchy? * * * Does the teacher who informs his class about the precepts of Marxism or the Declaration of Independence violate this prohibition? * * * And does the prohibition of distribution of matter `containing' the doctrine bar histories of the evolution of Marxist doctrine or tracing the background of the French, American, and Russian revolutions?" 385 U.S. at 599, 87 S.Ct. at 681, 17 L.Ed.2d 639. In short under the Mississippi Act as under the New York law attacked in Keyishian: "mere advocacy of abstract doctrine is apparently included * * * [and the statutory] language may reasonably be construed to cover mere expression of belief". 385 U.S. at 601, 87 S.Ct. at 682, 17 L.Ed.2d 639.
It is true that Whitney v. People of State of California, 1927, 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 approved a California statute similar to the Mississippi statute at issue in this case. But in Whitney the Court tested the statute against the background of International Harvester Co. of America v. Commonwealth of Kentucky, 1914, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284; United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516; Nash v. United States, 1913, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232; and Miller v. Strahl, 1915, 239 U.S. 426, 36 S.Ct. 147, 60 L.Ed. 364. These decisions involved challenges to economic regulatory legislation. In a line of decisions starting perhaps with Stromberg v. People of State of California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117, through Winters v. People of State of New York, 1948, 333 U.S. 507, 509-510, 517-518, 68 S.Ct. 665, 92 L.Ed. 840; Smith v. People of State of California, 1959, 361 U.S. 147, 151, 80 S.Ct. 215, 4 L.Ed.2d 205, and United States v. National Dairy Products Co., 1963, 372 U.S. 29, 36, 83 S.Ct. 594, 9 L.Ed.2d 561, to Cox v. State of Louisiana, 1965, 379 U.S. 536, 551-552, 85 S.Ct. 453, 13 L.Ed.2d 471, the Supreme Court has developed a standard of impermissible vagueness in First-Fourteenth Amendment cases far different from that employed in economic regulation cases. This development was explicitly recognized in Dombrowski v. Pfister:
Because of the sensitive nature of constitutionally protected expression, we have not required that all of those subject to overbroad regulations risk prosecution to test their rights. For free expressionof transcendent value to all society, and not merely to those exercising their rightsmight be the loser. Cf. Garrison v. State of Louisiana, 379 U.S. 64, 74-75 [85 S.Ct. 209, 215, 216, 13 L.Ed.2d 125]. For example, we have consistently allowed attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. Thornhill v. State of *569 Alabama, 310 U.S. 88, 97-98 [60 S.Ct. 736, 741-742, 84 L.Ed. 1093]; NAACP v. Button [371 U.S. 415] at 432-433 [83 S.Ct., at 337-338]; cf. Aptheker v. Secretary of State, 378 U.S. 500, 515-517 [84 S.Ct. 1659, 1668-1669, 12 L.Ed.2d 992]; United States v. Raines, 362 U.S. 17, 21-22 [80 S.Ct. 519, 522-523, 4 L.Ed.2d 524]. We have fashioned this exception to the usual rules governing standing, see United States v. Raines, supra, because of the " * * * danger of the existence of a penal statute susceptible of sweeping and improper application." NAACP v. Button, supra, 371 U.S., at 433 [83 S.Ct., at 338, 9 L.Ed. 405].
We hold that the Mississippi Criminal Syndicalism Act is so vague and overbroad as to violate First Amendment rights read into state laws by the Fourteenth Amendment.

III.
We do not reach the question whether 28 U.S.C. § 1343, 42 U.S.C. § 1971, and 28 U.S.C. § 1983 are exceptions to 28 U.S.C. § 2283, the federal anti-injunction statute. The plaintiffs have prayed for a declaratory judgment. At this time and in the circumstances this case presents, our declaration that the Criminal Syndicalism Act is unconstitutional is appropriate relief without the necessity of the court's issuing an injunction. We may assume that the state and county officials will withhold any action to enforce the Act, until a final judgment is rendered. Should this case not be appealed or should the Supreme Court affirm our judgment on appeal, we may assume that the charges against the plaintiffs will be dismissed.
The Court has considered all of the contentions of the defendants. We find them to be without merit. The Court grants the plaintiffs' motion for a summary judgment declaring the Mississippi Criminal Syndicalism Act unconstitutional.
WISDOM, Circuit Judge (concurring specially).
I concur in the Court's conclusion that the Mississippi Criminal Syndicalism Act is unconstitutional for the reasons stated in Court's opinion. I would hold, however, that the Court has authority to enjoin enforcement of the Act.
(1) Section 2283 is inapplicable; these cases were removed to the federal court and are still in this Court. There are, therefore, no presently pending state proceedings.
(2) In any event, the fact that the State brought these present prosecutions, justifies an injunction against future prosecutions directed against the agents or persons similarly situated.
(3) 42 U.S.C. § 1983, to say nothing of 28 U.S.C. § 1343 and 42 U.S.C. § 1971, is an express exception to 28 U.S.C. § 2283.
Putting the worst possible light on the plaintiffs' actions, they did nothing more than express opposition to their subordinate place in society. To prosecute them for this is an abuse of the prosecutorial function. As the Court said in Cox v. State of Louisiana, (II), 5 Cir. 1965, 348 F.2d 750:
"A civil complaint asserting such an abuse of the prosecutorial function would state a claim under the Civil Rights Act, 42 U.S.C. § 1983 and justify injunctive relief. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22. This is not a Douglas v. City of Jeannette [319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324], Stefanelli [v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138], or Cleary v. Bolger [371 U.S. 392, 83 S.Ct. 385] situation. Here the State, through the Parish District Attorney, under the guise of protecting the administration of justice, is challenging the Nation on a national policy expressed in the Constitution, carried out by Congress, and validated by the Supreme Court.
"The general principle, basic to American Federalism, that United States courts usually should refrain from interfering with state courts' *570 enforcing local laws is unassailable. But the sharp edge of the Supremacy Clause cuts across all such generalizations. When a State, under the pretext of preserving law and order uses local laws, valid on their face, to harass and punish citizens for the exercise of their constitutional rights or federally protected statutory rights, the general principle must yield to the exception: the federal system is imperiled."
I go along with Judge Rives's dissent in Cameron v. Johnson, S.D.Miss.1966, 262 F.Supp. 873:
"The danger to freedom of speech and assembly of such a broad and vague delegation of power as here involved is too great to expose it to the long road of case-by-case litigation in the hope that some day the statute's reach will be narrowed to constitutionally permissible limits."
This case involves no federal invasion of states' rights protected by Section 2283. Instead, this case requires rightful federal interposition under the Supremacy Clause to protect the individual citizen against state invasion of his constitutionally protected national rights as a citizen of the United States.[2]
NOTES
[1] Senate Bill No. 2027 (Miss.Code Ann. §§ 2066.5-01 to 2066.5-06 (1964 Supp.)

AN ACT to define criminal Syndicalism; to make unlawful the act of criminal syndicalism; to prohibit assemblage for the purpose of criminal syndicalism; to provide the penalty therefore; and for related purposes.
Be it enacted by the Legislature of the State of Mississippi:
Section 1. Criminal syndicalism as used in this act is hereby defined to be the doctrine or precept which advocates, teaches or aids and abets the commission of crime, sabotage, (which word is hereby defined as meaning wilful and malicious physical damages or injury to physical property), unlawful acts of violence and force, arson or other unlawful acts or methods of terrorism as a means of accomplishing or effecting a change in agricultural or industrial ownership or control or in effecting any political or social change or for profit.
Section 2. Any person who:
(1) By word of mouth or written words or personal conduct advocates, instigates, suggests, teaches or aids and abets criminal syndicalism or the duty, necessity, propriety or expediency of committing crime, criminal syndicalism, sabotage, violence or any other unlawful method of terrorism as a means of accomplishing or effecting a change in agricultural or industrial ownership or control or effecting any political or social change or for profit; or
(2) Openly, wilfully and deliberately by spoken or written words justifies, or attempts to justify, criminal syndicalism or the commission or the attempt to commit crime, sabotage, violence or other unlawful methods of terrorism with intent to exemplify, approve, spread, advocate, instigate, teach, aid, suggest or further the doctrine of criminal syndicalism; or
(3) Prints, publishes, edits, issues, circulates, sells, distributes or publicly displays any book, paper, pamphlet, document, poster, handbill or written or printed matter in any form whatsoever containing, advocating, instigating, advising, suggesting, aiding and abetting or teaching criminal syndicalism; or
(4) Organizes or helps to organize or knowingly becomes a member of or voluntarily assembles with any society, organization, group or assemblage of persons organized, formed, or assembled to advocate, teach, aid and abet criminal syndicalism; or
(5) Wilfully, by personal act or conduct, practices or commits any act advised, advocated, taught or aided and abetted by the doctrine or precept of criminal syndicalism with intent to accomplish a change in agricultural or industrial ownership or control, or effecting any social or political change or for profit; is guilty of a felony, and upon conviction thereof shall be punished by a fine of not less than Two Hundred Dollars ($200.00) nor more than One Thousand Dollars ($1,000.00), or by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years, or by both such fine and imprisonment.
Section 3. Whenever two or more persons assemble or consort for the purpose of advocating, encouraging, teaching or suggesting the doctrine of criminal syndicalism as defined in this act, such assemblage is unlawful, and every person voluntarily participating therein by his presence, aid or instigation is guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state penitentiary for a term of not less than one year nor more than ten years, or by a fine of not less than Two Hundred Dollars ($200.00), nor more than One Thousand Dollars ($1,000.00), or by both such imprisonment and fine.
Section 4. The owner, lessee, agent, superintendent, janitor, caretaker or other person in charge, or occupant of any place, building, room or rooms or structure who knowingly permits therein any assembly or consort of persons prohibited by the provisions of Section 3 of this act or who, after notification by authorized public or peace officer that the place or premises, or any part thereof, is so used, permits such use to be continued is guilty of a misdemeanor and punishable by imprisonment in the county jail for not less than sixty days nor more than one year, or by a fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00), or by both such imprisonment and fine.
Section 5. The provisions of this act are severable. If any section, subsection, paragraph, sentence or clause of this act is for any reason held to be invalid, the remainder of this act shall remain valid and enforceable.
Section 6. That this act shall take effect and be in force from and after its passage.
[2] Baines v. City of Danville, 4 Cir. 1964, 337 F.2d 579, cert. denied, 381 U.S. 939, 85 S.Ct. 1772, 14 L.Ed.2d 702 (1965) held that Section 1983 is not an exception to Section 2283. In analogous situations, however, decisional authority can be found for injunctive relief or removal. Dilworth v. Riner, 5 Cir. 1965, 343 F.2d 226 authorized injunctive relief for plaintiffs charged with breach of the peace for a sit-in demonstration in a restaurant, a federally protected right. City of Greenwood v. Peacock, 1966, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944, denied removal of certain state court prosecutions but recognized the availability of injunctive relief under some of the allegations made in the Peacock removal petitions. Compare State of Georgia v. Rachel, 1966, 384 U.S. 780, 86 S. Ct. 1783, 16 L.Ed.2d 925, permitting removal of state prosecutions for activities now protected by Title II of the Civil Rights Act of 1964. See also Tolg v. Grimes, 5 Cir. 1966, 355 F.2d 92, cert. denied 384 U.S. 988, 86 S.Ct. 1887, 16 L.Ed.2d 1005 (1966); NAACP v. Thompson, 5 Cir. 1966, 357 F.2d 831, 838; Hillegas v. Sams, 5 Cir. 1965, 349 F.2d 859, 863, cert. denied 383 U.S. 928, 86 S.Ct. 927, 15 L.Ed.2d 847 (1966); Cooper v. Hutchinson, 3 Cir. 1950, 184 F.2d 119; Tribune Review Publishing Co. v. Thomas, W.D.Pa.1957, 153 F.Supp. 486, 490. And see Moore, Federal Practice par. 0.213. (1) at 2416 (2d ed. 1960); Mintz, The Dombrowski RemedyFederal Injunctions Against State Court Proceedings Violative of Constitutional Rights, 21 Rutgers L.Rev. 92 (1966); Boyer, Federal Injunctive Relief: A Counterpoise Against the Use of State Criminal Prosecutions Designed to Deter the Exercise of Preferred Constitutional Rights, 13 How.L.Jour. 50 (1967); Brewn, Dombrowski v. Pfister, 34 Fordham L.Rev. 71 (1965).

Cf. United States v. Wood, 5 Cir. 1961, 295 F.2d 772 holding that 42 U.S.C. § 1971 is an exception to Section 2283.