Robert BAKER et al., Plaintiffs,

v.

William E. BINDNER, Chief of Police of
the City of Louisville, Kentucky
et al., Defendants.

Civ. A. No. 5648.

United States District Court
W. D. Kentucky,
Louisville Division.

Oct. 13, 1967.

Neville M. Tucker, Charles J. Lunderman, Jr., Danial T. Taylor, III, Louisville, Ky., Jack Greenberg, Melvyn Zarr, New York City, Morton Stavis, Dennis J. Roberts, Newark, N. J., William M. Kunstler, Arthur Kinoy, New York City, for plaintiffs.

Eugene H. Alvey, E. P. Sawyer, Robert Matthews, Atty. Gen., Commonwealth of Kentucky, Frankfort, Ky., J. Leonard Walker, Scott Miller, Jr., Ralph H. Logan, Louisville, Ky., for defendants.

Joseph B. Helm, James Hickey, Louisville, Ky., for Amicus Curiae—representing American Civil Liberties Union.

## OPINION

JAMES F. GORDON, District Judge.

The plaintiffs, individually and by class representation, bring this action against the defendants, individually and as City of Louisville and Commonwealth of Kentucky officials, the thrust of the complaint and the complaint as amended being doubled edged in nature, i.e., for *declaratory judgment relief as to the constitutionality of certain city ordinances, state statutes and a circuit court restraining order on the one hand, and injunctive relief against the enforcement of such against the plaintiffs and* their class; enforcement allegedly designed and carried forth by defendants with the specific purpose and resultant effect of suppressing plaintiffs' peaceable protest against alleged racial discrimination in the sale and rental of housing in the city of Louisville, Kentucky.

Plaintiffs assert the jurisdiction of the Court arises under Title 28 U.S.C. §§ 1343(3), (4), 2201, 2202; Title 42 U.S.C. §§ 1981, 1982, 1983 and 1985; and the First and Fourteenth Amendments to the Constitution of the United States. Further, that this is a proper cause for determination by a 3-Judge court pursuant to 28 U.S.C. §§ 2281, 2284.

Without unduly burdening this opinion with a recitation of the day by day occurrences, suffice it to say, evidence developed at an extensive factual hearing before this Court discloses generally that, beginning in the early spring of 1967 and continuing for months thereafter, the plaintiffs initiated and participated in a series of walks or marches (sometimes called "demonstrations"), all in and about the city of Louisville, Kentucky, designed to bring to the attention of the community and the officials of the city the conditions which the plaintiffs deemed unacceptable to them, that is, alleged discrimination in the sale and rental of housing and subsequent failure in their efforts to secure passage of an open housing ordinance before the Board of Aldermen.

Soon following commencement of plaintiffs' activities, individuals and at least one other organization, dedicated to the maintenance of the status quo in the housing and rental picture, began to likewise assemble at the locations of the anticipated "demonstrations" of the plaintiffs, and to taunt and heckle the open housing advocates. These persons became known as the "hecklers".

Entered then the police, to stand as a buffer between these diverse groups in an effort to prevent actual confrontation, which was feared by the enforcement officers would result in public disturbance and disorder. Arrests resulted, made primarily from the plaintiffs'

group, for the violation of the ordinances and statutes herein under attack and hereinafter dealt with. Further, as the fires of passion were fanned, these law enforcement officials (some of the defendants herein) obtained from The Honorable Marvin Sternberg, Judge of the Jefferson County Circuit Court (also a named defendant), a restraining order (here also under attack), the effect of which order was to enjoin the plaintiffs from their demonstration activities, except at designated times, and only after advance notice to the police of the place of assembly, and further limiting the number of plaintiffs in each "demonstrating" group, and requiring specification of the route of plaintiffs' anticipated march. Subsequently, by stipulation, Judge Sternberg's order was somewhat relaxed as to its restrictions.

From all of the evidence heard this Court reaches the following factual conclusions. We do not find the activities of the plaintiffs and their class to be "hard core", and by like token we do not find the defendants to have been guilty of selective enforcement of the laws against these plaintiffs so as to frighten or coerce them. The proof establishes no pattern of selective arrest aimed at the plaintiffs as against all other persons. The enforcement activity in these circumstances does not appear to us to have been dedicated to a halting of the demonstrations, but rather to a separation of the adversaries and to the protection of all concerned, including the general public. In this connection for instance, the only time the tear gas was used by the police it was not used against the plaintiffs, but against the "hecklers" and the spectators who had assembled to taunt them. Further, we refer to the fact that only in one slight reference in the proof was there a breath of any evidence, and it of no substantial consequence, of discourtesy on the part of the police, and nothing was offered approaching a charge of police brutality or their use of unreasonable force. An examination of the instances of when arrests were made reflects to our satisfaction that such were, for the most

part, made only when either dictated by reasonable protective necessity to forestall confrontation and then such were made from both groups of individuals in the controversy; or were made in those instances when the plaintiffs, in support of their belief of their non-violent principle, invited arrest by the police; or were made only after reasonable police requests were refused.

■ Accordingly, we feel that the plaintiffs have failed by the proof to support their allegation that the police, faced with the choice between constitutional guarantees and actual control of the populus, they (the police) chose suppression of constitutional rights rather than other avenues of control. We find no unconstitutional use of an otherwise constitutional statute. Very frankly, we as a Court are at a loss to determine what the police could have done, or left undone, under the circumstances, with which plaintiffs would have found no fault.

Thus it is apparent that, in the judgment of this Court, the plaintiffs, in all fairness and practicality, have no legitimate complaint in this situation could we but find that all of the ordinances and statutes affecting freedom of expression in this ligitation were constitutional. This we are unable to do as we find certain of them vague and overbroad, and of *possible* sweeping application.

Though, as heretofore stated, we do not find the defendants herein to have so used the unconstitutional statutes and ordinances in a manner which might be termed *deliberately* to suppress the constitutional rights of the plaintiffs and their class; such statutes and ordinances, being readily susceptible of such use, should, in our opinion, be struck down as unconstitutional.

■ Any unconstitutional statute, attempting to regulate First Amendment rights, which has been invoked, or as here, in reasonable anticipation of future events will be invoked, against a member of society, does, in and of itself, result in a suppression of constitutional rights, i. e., "chilling effect". Accord-

ingly, we find ourselves unable to invoke the abstention doctrine as urged upon us by the defendants, and therefore take jurisdiction of this case under the authority expressed in Dombrowski v. Pfister, 380 U.S. 479, 489, 85 S.Ct. 1116, 1122, 14 L.Ed.2d 22 (1965), wherein the Supreme Court said:

"We hold the abstention doctrine is inappropriate for cases such as the present one where, unlike Douglas v. City of Jeannette, [319 U.S. 157, 63 S. Ct. 877, 87 L.Ed. 1324,] statutes are justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities."

██ We therefore grant these plaintiffs declaratory judgment relief as to the constitutionally defective ordinances and statutes hereinafter discussed. We take judicial notice of them and their content as they are set forth in the complaint (not being denied in the answer).

Turning first to Kentucky Revised Statute 432.020, which provides as follows:

432.020 Criminal Syndicalism.

Any person who commits, aids or counsels any crime, physical violence, destruction of property, intimidation, terrorism or other unlawful act or method to accomplish any political end or to bring about political revolution shall be confined in the penitentiary for not more than twenty-one years, or fined not more than ten thousand dollars, or both.

██ It can be seen from the foregoing that it would be a criminal offense for a person to "counsel" an unlawful method to accomplish a political end. In Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), the Supreme Court when confronted with a state statute prohibiting persons from "advising" about the doctrine of unlawful overthrow of the government, pointed out that "mere advocacy of abstract doctrine is apparently included", (385 U.S. at 600, 87 S.Ct. at 682), and struck down the statute holding it to be "plainly susceptible of sweeping and improper application". Supra 599, 87 S.Ct. We apply the same rationale to the statute here in issue and hold KRS 432.020 unconstitutional. As was said in N.A.A.C.P. v. Button, 371 U.S. 415, 432, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963):

"For standards of permissible statutory vagueness are strict in the area of free expression. * * *
Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity."

Also see Carmichael v. Allen, D.C., 267 F.Supp. 985 (1966); Ware v. Nichols, D.C., 266 F.Supp. 564 (1967).

██ Next directing our attention to Kentucky Revised Statutes 437.110(1), which we hold unconstitutional.

§ 437.110 Conspiracy; banding together for unlawful purpose.

(1) No two or more persons shall confederate or band themselves together and go forth for the purpose of intimidating, alarming, disturbing or injuring any person, or of taking any person charged with a public offense from lawful custody with the view of inflicting punishment on him or of preventing his prosecution, or of doing any felonious act.

This statute makes it a crime for two or more persons to go forth together for the purpose of "disturbing another" person. It is not limited in its applicability to violent conduct on the part of the offender. It appears written as embracive of terms of expression and is susceptible of being read to include such functions as peaceable assembly.

The Supreme Court has held that one function of freedom of speech is to invite dispute, saying:

"It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1948).

Likewise, in Ashton v. Kentucky, (1966) 384 U.S. 195 at page 200, 86 S.Ct. 1407, at page 1410, 16 L.Ed.2d 469, the Court, after canvassing its cases on statutes containing criminal penalties for "disturbing" persons, said such a proscription:

"leaves wide open the standard of responsibility. It involves calculations as to the boiling point of a particular person * * * not an appraisal of the nature of the contents *per se.*"

Also see Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Carmichael v. Allen, Supra.

■ Turning now to a consideration of Kentucky Revised Statutes 436.520 which reads as follows:

§ 436.520 Vagrancy.

(1) Any person guilty of being a vagrant shall, for the first offense, be fined ten dollars or imprisoned for thirty days, or both. For the second and each subsequent offense, he shall be imprisoned for sixty days.

(2) "Vagrant," as used in subsection (1) of this section and KRS 436.530 means:

(a) Any able-bodied male person who habitually loiters or rambles about without means to support himself, and who has no occupation at which to earn an honest livelihood; or

(b) Any able-bodied male person without visible means of support who habitually fails to engage in honest labor for his own support or for the support of his family, if he has one; or

(c) Any idle and dissolute able-bodied male person who purposely deserts his wife or children, leaving any of them without suitable subsistence or suitable means of subsistence; or

(d) Any able-bodied person without visible means of support who habitually refuses to work, and who habitually loiters on the streets or public places of any city.

This statute is a "catch all" not specific in expression as to what it really seeks to prohibit nor what type of conduct is violative of the prohibition. Perhaps such was its aim and intent; that it snare those felt to be "vaguely undesirable".[1]

Movement is essential to freedom and property status (livelihood) cannot be the measure of the rights of citizenship.

We hold "KRS 436.520 Vagrancy" to be unconstitutional because of vagueness and overbreadth. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). It does not give fair notice; it is arbitrary as to its standards and is grossly susceptible of overreaching federal constitutional guarantees by lending itself for ready use by officials against those deemed to merit their displeasure. Thornhill v. State of Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

We now consider those ordinances of the City of Louisville here under attack held by us to be unconstitutional under the standards of the law as hereinafter expressed.

■ The City of Louisville Parading Without a Permit Ordinance 321.01:

§ 321.01 Permits for Parades, Assemblages, Processions.

It shall be unlawful for any person to conduct or to participate in any street assemblage, parade or procession, other than a funeral procession, upon any street except upon a permit issued by the Director of Safety. Application for such permits shall be made in such form as the Director of Safety shall prescribe not less than 12 hours before the time intended for such assemblage, parade or procession. Such permit or an order accompanying it shall designate the places of gathering or formation and of dispersal of such assemblages, parades or processions, and the route of march or travel, and the streets or portions of streets which may be used or occupied therein, and the time and duration of such assemblage, parade or procession; provided, however, that no per-

---

1. Mr. Justice Frankfurter in Winters v. People of State of New York, 333 U.S. 507 at 540, 68 S.Ct. 665 at 682, 92 L.Ed. 840 (1948).

mits for parades or processions of an advertising nature shall be granted at any time in the Central Traffic District between the hours of 8:00 A.M. and 6:00 P.M.

■ This ordinance, in our judgment, is wanting of a standard to govern the discretion of the issuer (here the Director of Safety) of the parade permit. The ordinance is plainly unconstitutional under Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965), and the cases cited therein. Though we recognize that a city clearly has the authority to handle objects of legitimate municipal concern, they nevertheless must be handled in a constitutional manner, i.e., the standards must appear in the face of the ordinance. Guyot v. Pierce, 372 F.2d 658 (5 Cir., 1967).

■ Likewise we declare unconstitutional the Louisville Disorderly Conduct Ordinance 507.02 reading as follows:

§ 507.02 Disorderly Conduct.

No person shall conduct himself in a disorderly manner in the City.

All parties agree that there is no definition of the term "disorderly conduct" in the ordinance but the defendants contend that this defect is cured in that "the common man is familiar with the term and its application". They further contend that the vagueness of this ordinance is cured by the construction of the Kentucky Court of Appeals in City of Pineville v. Marshall, 222 Ky. 4, at 9, 299 S.W. 1072 at 1074, wherein that court narrowed disorderly conduct to "words and acts which tend to disturb the peace or endanger the morals, safety or health of the community, or of a class of persons or family". We do not believe this overcomes the constitutional defect for such an ordinance was struck down as unconstitutional in Carmichael v. Allen, supra, which said ordinance there was more resistant to attack than the Louisville ordinance here in question, for it read:

"Disorderly Conduct. It shall be unlawful for any person to act in a violent, turbulent, quarrelsome, boist-

erous, indecent or disorderly manner, or to use profane, vulger or obscene language, or do anything tending to disturb the good order, morals, peace or dignity of the City."

An examination of Louisville Ordinance 507.02 can leave no doubt that it is broader than that condemned by the Supreme Court both in Edwards v. South Carolina, 372 U.S. 229 at 238, 83 S.Ct. 680 at 685, 9 L.Ed.2d 697, and in Terminiello v. City of Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131. It leaves to the executive and judicial branches too wide a discretion in the application of the law and too readily permits them to make a crime out of what is protected activity.

■ Lastly, we give consideration to Louisville Ordinance 525.01(a), Loitering and Related Offenses, which reads as follows:

§ 525.01(a) Loitering and Related Offenses.

It shall be unlawful for any person to engage in the following acts:

(a) Loitering. Any person, without visible means of support, or unable to give a satisfactory account of himself, found loitering or strolling in, about, or upon any street, alley, or other public way or public place, or at any public gathering or assembly, or in or around any store, shop or business or commercial establishment, or on any private property or place, or who frequents or loafs, loiters, or idles in or around or is the occupant of any house or establishment of ill fame, gambling establishment, or establishment where intoxicating liquor is sold without a license, or is conducting himself in a lewd, wanton or lascivious manner in speech or behavior.

Though we recognize that an ordinance of the type above expressed has been held to be constitutional, Hicks v. District of Columbia, 197 A.2d 154 (D.C.Ct.App.1964), and that in one such case, District of Columbia v. Ricks, D.C. App., 228 A.2d 316, wherein the district judge felt the ordinance was unconstitutional, he nevertheless upheld it upon

the ground that it was his burden to do so since the circuit court of his circuit had in the past held the statute to be constitutional, we believe that recent expressions of the Supreme Court of the United States are indicative of the fact that if squarely presented with Louisville Ordinance 525.01(a), Loitering, the same would be declared by it to be unconstitutional. This ordinance would punish a person who "loiters" in a public place and is unable to give a satisfactory account of himself. We do not believe it can stand consistent with Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965). To us it appears overbroad and vague. We do not believe that the requirement that an offender "give a satisfactory account of himself" passes constitutional tests. It places sole determination in the discretion of the policeman on the beat. The standard of "satisfactory account" is not certain, for what may be satisfactory to one may be unsatisfactory to another, and the meaning of the word "satisfactory" itself is not susceptible of any standard of exactness. What kind of "satisfactory"? Legal or moral satisfaction? What is the time limit to be embraced within the giving of "a satisfactory account" that will excuse the offender in the sole discretion of the police officer who demands it? A satisfactory account at that instant or a satisfactory account of past activity? If of past activity, is that not guilt without proof? Does the mere fact that one cannot give a satisfactory account of himself to the pleasure of the inquiring officer make him guilty of an unspecified crime? Such unbridled discretion cannot be constitutionally vested in the policeman or the court. Such overbreadth was voided in Territory of Hawaii v. Anduha, 48 F.2d 171, 173 (9 Cir., 1931), under a regulation which punished persons who habitually loafed, loitered and idled in public places.

In United States v. Margeson, D.C., 259 F.Supp. 256, 268 (1966), the court voided a state criminal statute requiring one to "give a good account of himself" on the ground that it failed to meet the test of overbreadth, the court therein putting to question those elements specified by us above as to what is really embraced in a good account and what limits in time, for instance, are placed upon it.

Though we hold that the statutes relied upon by the plaintiffs as the basis of their cause of action herein are exceptions to 28 U.S.C. § 2283 and that accordingly injunctive relief is available, we believe and assume that, as to the void statutes and ordinances, the Commonwealth of Kentucky and City Officials will withhold any enforcement action against those plaintiffs now charged thereunder until a final judgment is rendered in this matter. Should this case be not appealed or be affirmed on appeal, we assume that the charges for violation of these void statutes and ordinances against all plaintiffs and members of their class will be dismissed.

As to the Parade Permit Ordinance 321.01 herein declared void as unconstitutional, we will at this time make no injunctive order prohibiting its future enforcement but will grant to the City of Louisville a period of sixty (60) days during which time it may, if it sees fit, enact such an ordinance in lieu thereof as meets constitutional requirements. Though we recognize that this pronouncement of delay, which has the effect of allowing the operation of the unconstitutional Parade Permit Ordinance for a limited period of time, might seem unusual, it is not totally novel when dictated in the public interest. Carmichael v. Allen, supra. Likewise, Brown v. Board of Education, etc., 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955), wherein the Supreme Court delayed the effect of its integration judgment in the public interest to allow the submission of plans for an orderly integration of public school facilities. In certain reapportionment cases, injunctions have been stayed in the public interest even to the point of allowing officials to be elected in unconstitutionally

apportioned districts. See Drum v. Seawell, D.C., 249 F.Supp. 877 (1965), affirmed 383 U.S. 831, 86 S.Ct. 1237, 16 L.Ed.2d 298 (1967); and Baker v. Clement, D.C., 247 F.Supp. 886, 3 judges sitting, M.D.Tenn. (1965).

Motion having been made therefor, we dismiss this action as to the defendant Judge Marvin Sternberg, individually and as Judge of the Jefferson Circuit Court, and also as to its attack upon the constitutionality of the restraining order issued by said court as per authority of Walker v. City of Birmingham, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210.

The Court sustains the motion of Edwin A. Schroering, Jr., to dismiss this action as to him.

Kentucky Revised Statute 208.020(3), Contributing to the Delinquency of a Minor, is held by us to be constitutional.

All other motions not expressly dealt with are overruled.

CELEBREZZE, Circuit Judge, Sixth Circuit, concurs.

BROOKS, District Judge, dissents.

### DISSENTING OPINION

BROOKS, District Judge (dissenting).

I respectfully dissent as, under the circumstances of this case, I cannot read Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) as compelling the abandonment of the doctrine of abstention. Here, after a full evidentiary hearing (a hearing was not held in Dombrowski) the plaintiffs' proof has completely failed to establish any of the factual allegations of their complaint and amended complaint upon which they relied for invoking the jurisdiction of this court. They failed to prove a conspiracy by the defendants to "deprive plaintiffs of their constitutional rights." They failed to establish that the arrest and prosecutions of the plaintiffs were "fraudulently contrived", have been carried on in bad faith and "are being maintained without any hope of ultimate success, but only to discour-

age these protests and to support racial discrimination in housing in Louisville." They failed to establish that there was an unconstitutional use of an otherwise constitutional statute or ordinance and they failed to establish that "these prosecutions have had and continue to have a chilling effect upon civil right advocacy in Louisville, Kentucky." Not only did the plaintiffs fail to prevail on all of these issues, but the evidence affirmatively established that the activities of the defendant law enforcement officials were conducted with impartiality, with commendable restraint and solely in the public interest of maintaining law and order.

It is all these factors that distinguishes this case from Dombrowski and as the Supreme Court cautions in that case " * * * federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework." Therefore, the fact that these statutes and ordinances under attack may be subject to serious constitutional infirmities should not of itself permit federal interference with a state's good-faith administration of its criminal laws. Surely Dombrowski is not a mandate requiring the federal courts, when jurisdiction exists, to pass upon the constitutionality of all the criminal laws of a state that may be subject to challenge. Wells v. Hand, 238 F.Supp. 779 (M.D.Ga.1965), affirmed sub nom Wells v. Reynolds, 382 U.S. 39, 86 S.Ct. 160, 15 L.Ed.2d 32 (1965); Brooks v. Briley, Mayor, 274 F.Supp. 538 (M.D.Tenn.1967) decided October 9, 1967 and cases cited therein.

Moreover, the plaintiffs have failed to support their conclusion of irreparable injury based on the allegation that "a substantial loss of federal rights will occur if plaintiffs and the class they represent must await the state court's disposition and ultimate review in the Supreme Court of the United States of these multiplicitous (sic) prosecutions." The Kentucky Declaratory Judgment Act, KRS Chapter 418, provides expeditious procedure by which the constitutionality

of the challenged statutes and ordinances can be determined without invoking federal jurisdiction. See Cassidy v. City of Bowling Green, 368 S.W.2d 318 (1963 Ky.); Goodwin v. City of Louisville, 309 Ky. 11, 215 S.W.2d 557 (1948); City of Harrodsburg v. Southern Ry. Co. in Kentucky, 278 Ky. 10, 128 S.W.2d 233 (1939).

Over the years the Supreme Court has consistently followed the doctrine of abstention in attacks on state laws. Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186 (1959); Shipman v. DuPre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877 (1950); Spector Motor Service v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944); Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942); Railroad Commission of Texas v. Pullman Company, 312 U.S. 496, 61 S. Ct. 643, 85 L.Ed. 971 (1941). I would follow it here.