12 N.Y.2d 276 (1963)
William V. Bradley, as President of International Longshoremen's Association, et al., Appellants,
v.
Waterfront Commission of New York Harbor et al., Respondents.
Court of Appeals of the State of New York.
Argued January 22, 1963.
Decided February 28, 1963.
Osmond K. Fraenkel and Harold Krieger for appellants.
Irving Malchman and William P. Sirignano for respondents.
Chief Judge DESMOND and Judges DYE, BURKE, FOSTER and SCILEPPI concur with Judge FULD; Judge VAN VOORHIS dissents and votes to modify in an opinion.
*278 FULD, J.
The Waterfront Commission Act became law in 1953. Its section 8 was thereafter challenged as invalid on grounds that the subject matter had been pre-empted by Federal legislation and that it violated the due process clause of the Fourteenth Amendment. Both this court and the United States Supreme Court, rejecting those arguments, upheld the section as constitutional. (De Veau v. Braisted, 363 U. S. 144, affg. 5 N Y 2d 236.) Some short time later, the Waterfront Commission concluded, on the basis of facts adduced at hearings which it conducted, that the provisions of the statute designed to eliminate the evils infesting the waterfront were being circumvented. It recommended corrective legislation and in 1961 the Legislature amended section 8 in order to remedy the situation (Waterfront Commission Act, §§ 8, 8-a, as amd. by L. 1961, ch. 211).
The present action was brought by the International Longshoremen's Association (I. L. A.) and four individuals, suing on behalf of themselves and others similarly situated, for a declaratory judgment that several of the amendments are unconstitutional. The courts below held them valid and we agree with that determination; indeed, we consider such a result virtually dictated by the decision in the De Veau case.
As originally enacted in 1953, section 8 prohibited the collection of any dues for or on behalf of any labor organization representing waterfront workers registered or licensed by the commission if any of its officers or agents had been convicted of a felony. The amendments enacted in 1961 extended the prohibition to any labor organization "which derives its charter from a labor organization" representing 100 or more employees registered or licensed by the Waterfront Commission "if any officer, agent or employee of such labor organization, or of a welfare fund or trust administered * * * by such labor organization * * *, has been convicted * * * of a felony, any misdemeanor involving moral turpitude", or of any of a *279 number of specifically enumerated crimes. (Italics represent new matter.)[1]
The claim of pre-emption  based on sections 1 and 7 of the National Labor Relations Act (guaranteeing the right of employees "to bargain collectively through representatives of their own choosing") and section 504, subdivision (a), of the Labor-Management Reporting and Disclosure Act of 1959 (disabling persons convicted of certain felonies from serving in positions of influence in labor unions)  is the same as that advanced when the statute in its original form was before the courts and what was then said in disposing of the contention is equally pertinent and decisive here.
We take up first the claim that the provision of the National Labor Relations Act pre-empts the 1961 amendments. Two of them were enacted to plug loopholes found to exist in the 1953 legislation. It appeared that the provision aimed at prohibiting convicted felons from holding influential positions in waterfront unions was being circumvented either by giving them jobs as "employees", instead of continuing them as "officers" and "agents", or by shifting them to non-waterfront locals chartered by the I. L. A. Quite obviously, if the statute as it originally stood was not pre-empted, these provisions designed to prevent an evasion of them were not. The third amendment simply expanded section 8 so as to render it applicable to persons convicted of "moral turpitude" misdemeanors in addition to "felonies". Section 8 of the New Jersey Waterfront Commission Act contained this precise provision and Congress was not only aware of this when it gave its consent to the bi-State compact but it knew that its "approval of the compact * * * would carry with it sanction of § 8" as passed by the New Jersey Legislature. (De Veau v. Braisted, 363 U. S. 144, 151, supra.) From all this, it seems clear that this claim of pre-emption is without basis. The course taken by Congress reflects no purpose *280 to pre-empt the State regulation contained in section 8 either in its original or amended form.
With respect to the claim of pre-emption based on enactment of the Labor-Management Reporting and Disclosure Act of 1959, we need but refer to the Supreme Court's rejection of that argument in De Veau: "When Congress meant pre-emption to flow from the 1959 Act it expressly so provided. * * * No such pre-emption provision was provided in connection with § 504(a). That alone is sufficient reason for not deciding that § 504(a) pre-empts § 8 of the Waterfront Commission Act. * * * And to make the matter conclusive, § 603(a) is an express disclaimer of pre-emption of state laws regulating the responsibilities of union officials" (363 U. S., at pp. 156-157).
Nor is there merit to the objections urged by the plaintiffs on due process grounds. Barring convicted "felons" from serving as officers or agents of waterfront unions was recognized in the De Veau case as "a reasonable means for achieving a legitimate state aim, namely, eliminating corruption on the waterfront" (363 U. S., at p. 157). Since the amendatory legislation here challenged  including that which extended the section's application to any person (whether union officer, agent or employee) convicted of a "misdemeanor involving moral turpitude"[2]  did no more than effect such changes as were deemed necessary to achieve the original objectives of the statute, there is no warrant for the charge that the statute in its modified form offends against due process.
The judgment appealed from should be affirmed, with costs.
VAN VOORHIS, J. (dissenting).
My view of this appeal is that which is taken by counsel to the Waterfront Commission of New York Harbor, viz., that with the exception of the extension of the Waterfront Commission Act to cover employees who have been convicted of felonies, the constitutional objections to section 8 as amended by chapter 211 of the Laws of 1961 are entirely *281 hypothetical. In this respect the Waterfront Commission's brief states as follows:
"Section 8, as amended, is a statute with numerous aspects affecting persons in many different situations. Some persons will be affected by the 1961 amendments because they are employees; some because they have been convicted of misdemeanors involving moral turpitude; and some because they are connected with so-called uncovered locals. What plaintiffs herein seek to do is to present almost every constitutional question that may possibly arise under Section 8, as amended, whether or not involving persons actually before the Court and indeed whether or not involving persons who actually exist.
"This blunderbuss attack upon Section 8, as amended, is contrary to every tenet of constitutional adjudication. For the courts will not decide constitutional questions in advance of the strictest necessity. Peters v. New York City Housing Authority, 307 N.Y. 519. It follows as a corollary that `constitutional questions are not to be decided hypothetically' and that this Court is `called upon to decide only the constitutional impact upon the statute as applied to the facts of this case.' People v. Merolla, 9 N.Y.2d 62, 68-69. In addition to these settled principles, there are two separability clauses that are applicable here (supra, pp. 6-7) and these require in effect that the constitutionality of Section 8, as amended, be adjudged only with respect to the facts actually put into issue herein by real persons properly before the Court."
The absence of controversy shown by facts in the record before the court seems to me to offend against the principle also that jurisdiction is not entertained to render declaratory judgments in the absence of specific controversy that has actually arisen (Civ. Prac. Act, § 473; Rules Civ. Prac., rule 212; Red Robin Stores v. Rose, 274 App. Div. 462, 466-469; Reed v. Littleton, 249 App. Div. 310, 312; Leonard v. John Hancock Mut. Life Ins. Co., 281 App. Div. 859; Standardbred Owners Assn. v. Yonkers Raceway, 1 A D 2d 882). Courts do not give advisory opinions unless a justiciable issue has been presented (Matter of State Ind. Comm., 224 N.Y. 13, 16; New Jersey v. Sargent, 269 U. S. 328).
With the exception of the extension to employees of the disabilities imposed by the Waterfront Commission Act, where an *282 actual controversy is presented due to the prior felony convictions of plaintiffs, Condon, De Veau and Hennessey, the complaint in this action calls for the rendition of a merely advisory opinion by the courts. The circumstance that this is a controversial statute does not mean that an actual controversy is presented in court for adjudication. An important reason on account of which advisory opinions are not rendered is that it is impossible to know in advance the shape which controversies will take that will arise out of this statute, which contemplates a wide variety of possible situations the length and breadth of which it is only possible now to guess. Plaintiffs are doing small service to themselves and to those whom they represent, it appears to me, by asking for such a broad and sweeping determination in advance of the real contests, the exact facts and nature of which are now but dimly foreshadowed, and which in certain instances might be resolved in their favor if they had not obtained what amounts at the threshold to a blanket approval of anything that may be done under the terms of the act.
For example, it is being decided by the majority that collection of funds is validly forbidden by the amended statute for unions having officers, agents or employees who have been convicted of "any misdemeanor involving moral turpitude". The only person mentioned who could possibly be bracketed under this description is plaintiff Di Brizzi, who, it is alleged, was once convicted of a misdemeanor "which, on information and belief, comes within the categories described in the 1961 amendment to Section 8." This allegation is denied in the answer for lack of knowledge or information sufficient to form a belief, nor has this allegation been supported by any affidavit on this motion for summary judgment stating what kind of a misdemeanor it was of which he was convicted. There is a triable issue concerning whether Di Brizzi was convicted of anything or, if so, of what. Nobody knows with certainty what misdemeanors do involve moral turpitude, which depends considerably upon the fluctuations and geography of public opinion or the personal attitude of the Judge. It is difficult to understand how some misdemeanors of that description could affect the qualification of a man to be an officer, agent or employee of a waterfront union. The quantity and variety of misdemeanors has multiplied so rapidly, and covers so large an area of human activity *283 in so many contexts of opinion, as to render almost anyone potentially subject to disqualification on that ground. For example, section 1142 of the Penal Law makes it a misdemeanor to sell or give away contraceptives or to give information as to how or where they may be obtained. A violation of this section of the Penal Law has been held to involve moral turpitude (Baretta v. Baretta, 182 Misc. 852; Halstead v. Nelson, 36 Hun 149). Would a conviction on that have any tendency to disqualify a man from working for a longshoreman's union at the harbor of New York? Is it the meaning of the pronouncement to be declared by the judgment in this case that no union could collect its dues if such a one were to be found upon its payroll? For anything that appears to the contrary, the single employee charged in the papers in the action with having been convicted of some misdemeanor involving moral turpitude may come within this or any of the categories of misdemeanors, except such as could be characterized beyond cavil as mala prohibita.
The affidavit of the president of the International Longshoremen's Association (I. L. A.) questions the "disqualification * * * for a large variety of non-felony offenses, with great doubt about the applicability of many misdemeanors because of the use of the vague term `moral turpitude.'" This doubt is very real and enters the picture not only on account of the uncertainty in labeling what misdemeanors do involve moral turpitude prior to a decision by the court of last resort, but also through the constitutional objection that in many instances it would impose restrictions upon a man's livelihood which are unrelated to his fitness to pursue his calling (Five Boro Elec. Contrs. Assn. v. City of New York, 12 N Y 2d 146). Serious difficulties would arise, for example, in determining what misdemeanors of the following kinds involve moral turpitude, and, if so, whether they could be found by the Legislature to have a bearing upon the performance of the occupation of officer, agent or employee of a longshoreman's union: tax convictions (i.e., income tax evasions contrasted with smuggling), housing violations, anti-discrimination offenses, sexual misdemeanors, communist activities, public intoxication once or repeatedly, driving while intoxicated with or without serious accidents, commercial offenses, criminal libel, criminal contempts of court or legislative committees, obscenity, offenses by public officials such as *284 retaining extra compensation or rewards, disturbing the peace, violation of the liquor laws as by sales to minors, or refusal to serve in the armed forces in time of war as conscientious objectors. These are only a few of the numberless situations which can arise concerning whether a particular misdemeanor involves moral turpitude or could be found to have a tendency to restrict within constitutional limits the pursuit of one's occupation or the earning of his livelihood.
The 1961 amendment to section 8, in referring to misdemeanors involving moral turpitude, follows these words with "or any crime or offense enumerated in subdivision three (b) of section five-n". That section refers among others to those convicted of "petit larceny, where the evidence shows the property was stolen from a vessel, pier or other waterfront terminal". The thought in these words is to limit disqualifying convictions to such as would have a tendency to render the officer, agent or employee undesirable on the waterfront. Yet if, in the same breath, the statute disqualifies all persons who shall have been convicted of misdemeanors involving moral turpitude, as the majority opinion appears to say, it would refer to all cases of petit larceny and not be limited to such as relate to waterfront operations. If that had been the intention of the Legislature, why were so many words employed to limit the application of the term to waterfront operations when at the same time, as the decision now being made appears to hold, all kinds of petit larceny convictions were to stand in the way of these activities? And if the Legislature meant to confine such crimes to such as would naturally tend to disqualify a man from serving in these capacities on the waterfront, then we should not pass upon what would have been the constitutionality of the 1961 amendment as if it had been designed to cover all misdemeanors involving moral turpitude whatever that may mean.
Before ruling on constitutionality, it is usual to construe a statute in order to ascertain what it provides before deciding whether what it provides transcends constitutional limitations. That is not possible in the present case since there is not opportunity to construe this statute in most of its ramifications in the absence of factual controversy. It is inappropriate, in my view, to ascribe to it over-all constitutional validity regardless *285 of how it may be construed in controversies hereafter to arise but which are not yet envisaged.
As is likewise stated in the brief for the Waterfront Commission, the provision prohibiting the collection of dues by I. L. A. locals which function outside of the State of New York, such as the I. L. A. local in Puerto Rico or Bermuda, is not presented by any controversy before the court. If there are out-of-State locals which have criminals as officers, agents or employees, they are not before the court, nor is it perceived how their interest would be affected or the particular bearing which it would have on I. L. A. whose dues are not collected by its locals but directly by the employers under a check-off system.
"Thus," continues the brief for the Waterfront Commission, "the only cases herein which are not hypothetical are those presented by plaintiffs, Condon, Hennessey and De Veau, all of whom have felony convictions and all of whom are union employees". In my view the judgment appealed from should be modified accordingly, and the court should decline to entertain jurisdiction respecting controversies under this severe and complicated statute which it is anticipated will arise but which have not yet been presented in court and the factual nature of which has not been disclosed.
Judgment affirmed.
NOTES
[1] The plaintiffs challenge all of the 1961 amendments except that which makes the statute applicable to union welfare funds and trusts. Although the defendants have questioned the plaintiffs' standing, we are satisfied that the I. L. A., at least, has a sufficient interest to prosecute the action. Two of the amendments under attack limit, in effect, those whom that organization may properly hire, while the third makes it more difficult for the I. L. A. to retain its association with its non-waterfront locals and tends to inhibit or discourage other non-waterfront locals from affiliating with it.
[2] It should be noted that the plaintiffs have not in this court argued that the quoted phrase is void for vagueness or lacks sufficiently definite standards. (Cf. Jordan v. De George, 341 U. S. 223, 229-230, where the Supreme Court observed that, although a similar phrase had been in the immigration laws for upwards of a half century and had also been used for many years "as a criterion" in other statutes, "No case has been decided holding that the phrase is vague, nor are we able to find any trace of judicial expression which hints that the phrase is so meaningless as to be a deprivation of due process.")