Hattie Mae RICKS, Appellant,

v.

UNITED STATES, Appellee.

Joseph N. WILLIAMS, Appellant,

v.

UNITED STATES, Appellee.

Hattie Mae RICKS, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

Nos. 4163–4165.

District of Columbia Court of Appeals.

Argued Feb. 6, 1967.

Decided April 6, 1967.

As Modified April 25, 1967.

Monroe H. Freedman and Sol Rosen, Washington, D. C., for appellants.

Theodore Wieseman, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Earl J. Silbert, Asst.

U. S. Attys., were on the brief, for appellee in Nos. 4163 and 4164.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for appellee in No. 4165. Richard W. Barton, Asst. Corp. Counsel, entered an appearance for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

Appellants were convicted under "The Narcotic Vagrancy Statute," D.C.Code 1961, § 33–416a which provides, *inter alia:*

(a) The purpose of this section is to protect the public health, welfare, and safety of the people of the District of Columbia by providing safeguards for the people against harmful contact with narcotic drug users who are vagrants within the meaning of this section and to establish, in addition (to another Act) * * *, further procedures and means for the care and rehabilitation of such narcotic drug users.

(b) For the purpose of this section—

(1) the term "vagrant" shall mean any person who is a narcotic drug user or who has been convicted of a narcotic offense in the District of Columbia or elsewhere *and* who—

(A) having no *lawful* employment or visible means of support realized from a *lawful* occupation or source, is found mingling with others in public or loitering in any park or other public place *and* fails to give a good account of himself; *or*

* * * * * *

(C) wanders about in public places at late and unusual hours of the night, either alone or in the company of or association with a narcotic drug user or convicted narcotic law violator, *and* fails to give a good account of himself * * *. (Emphasis supplied.)

Appellant Ricks was also convicted of violating the so-called "General Vagrancy Statute," D.C.Code 1961, § 22–3302 which states:

The following classes of persons shall be deemed vagrants in the District of Columbia:

(1) Any person known to be a pickpocket, thief * * * or felon, either by his own confession or by his having been convicted in the District of Columbia or elsewhere of any one of such offenses or of any felony, *and* having no lawful employment and having on lawful means of support realized from a lawful occupation or source, *and* not giving a good account of himself when found loitering around in any park * * * or other public place * * *.

* * * * * *

(8) Any person who wanders about the street at late or unusual hours of the night without any visible or lawful business *and* not giving a good account of himself. (Emphasis supplied.)

The appeals from the three convictions were consolidated for argument. The factual situations which culminated in the arrests and convictions are essentially as follows.

Appellant Williams was observed on three occasions between 11:00 p. m. and 3:20 a. m. for varying lengths of time. According to government testimony, each time he was in the company of at least one convicted prostitute known to be a narcotics user. He persistently denied use of narcotics but had old and new needle marks on his arms. He was accused by a dissatisfied customer of providing her with six capsules of sugar and quinine which had been sold as heroin. Within earshot of the police, he denied that he had sold her

"bad stuff" and insisted that it was "good" heroin. He was known to the officers as a twice convicted felon under the narcotic statutes. This appellant gave conflicting stories as to his employment and unsatisfactory explanations as to his reasons for being present on the streets at those hours.

As to her § 33–416a conviction, appellant Ricks was observed four times. (Police Department policy calls for three "observations" prior to arrest.) After midnight she spent 45 minutes in a carry out shop without making any purchase, leaving twice with different men and returning shortly thereafter alone. On another occasion at 9:30 p. m. she was standing with two narcotics violators and prostitutes and later on alone. Three times between 4:00 and 4:45 a. m. on another day she was seen getting in and out of parked cars with men at the wheels. The fourth observation was made at 10:50 p. m. At that time her arms showed old and new needle marks. On one of the above incidents, she admitted using narcotics. She gave conflicting stories on her employment and at one time refused to indicate her place of employment.

The general vagrancy conviction grew out of the following circumstances. At 3:08 a. m. she was standing in front of a building which had been raided as a house of ill-fame with convictions resulting. She stopped a man and the two proceeded to the door of another such house. Appelllant, on questioning as to who her companion was, said his name was "James." The man indicated it was Herman. She admitted being unemployed and her arms evidenced recent marks of narcotic use. As 1:04 a. m. on another day, she flagged down an automobile to ask the male occupant if "he was sporting tonight." She told this individual that she "didn't turn tricks" in anyone's car and for him to come with her to a certain address. Three days later at 4:10 a. m., she was again observed standing on a corner and admitted

that she was unemployed. On another occasion she was observed by a different officer at 1:30 a. m. approaching another male whose name she was unable to correctly state. She had scab marks on her arms. At trial, appellant admitted convictions for soliciting prostitution, petty larceny and for violations of the Uniform Narcotics Act, these convictions having been known to the officers.

Appellants urge six grounds for reversal of their convictions.

## I

■ It is contended that the Vagrancy Statutes improperly require (presentation and) proof of prior convictions, and thereby deny due process and a fair trial. One can be guilty of violating either statute without having previously been convicted. Both statutes embody separate paragraphs which disjunctively set up criteria amounting to vagrancy. Within these paragraphs, § 416a deals with convicted narcotics users; § 3302 deals with known pickpockets, thiefs, burglars, etc. But prior convictions are not essential to all the subsections. Both statutes require other factors which conjunctively amount to the violation. Even if this were not true, a long line of cases in this jurisdiction has held prior convictions admissible. Clark v. District of Columbia, D.C.Mun.App., 34 A.2d 711 (1943); Riley v. District of Columbia, D.C.App., 207 A.2d 121 (1965).[1]

## II

■ Appellants argue that the statutes unreasonably restrict freedom of movement in violation of the Due Process Clause of the Fifth Amendment citing Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958) and Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed. 2d 992 (1964). These cases refer to passport requests for international travel.

1. See also Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

While we are mindful of the danger of analogy, on the same subject the Supreme Court has said: "The fact that a liberty cannot be inhibited without due process of law does not mean that it can under no circumstances be inhibited." (Footnote omitted.) Zemel v. Rusk, 381 U.S. 1, 14, 85 S.Ct. 1271, 1274, 14 L.Ed.2d 179 (1965). We considered and rejected this argument urged by appellants in Jenkins v. United States, D.C.Mun.App., 146 A.2d 444, 446 (1958). Anyone using the streets for lawful business in a lawful manner may do so without restriction.

### III

It is also argued that punishment is imposed in cases like these despite the absence of any overt criminal act, without criminal intent and without causation of harm. This, it is claimed, violates the Eighth Amendment's prohibition against cruel and unusual punishment.

The argument seems bottomed on our *dictum* in Hunt v. District of Columbia, D.C.Mun.App., 47 A.2d 783, 784, affirmed, 82 U.S.App.D.C. 159, 163 F.2d 833 (1947), that "Vagrancy is a status or condition and the statute punishes one for being a certain kind of person, not for the doing of an overt act." But there we also said:

> The crime is personal and individual. * * * (I)n essence it is a personal condition arrived at not instantaneously but by a *mode of living*. Ibid. (Emphasis supplied.)

A "mode of living" involves acts. Thus, it is overt acts, a course of conduct, rather than "an overt act" which is prohibited by the statutes in question. Criminal intent was clearly revealed from the factual circumstances related above although we have held proof of this unnecessary. Wilson v. United States, D.C.App., 212 A.2d 805, 806

(1965) and cases there cited. Causation of harm was likewise manifest. Specifically, the men solicited by Ricks and the woman who tried to buy narcotics from Williams were victimized or otherwise exposed to criminal activity. Generally, the interrelation of crime and narcotics use had been clearly recognized. See Vauss v. United States, 365 F.2d 956, 957 (D.C.Cir.1966); Hansford v. United States, 122 U.S.App. D.C. 320, 322, 353 F.2d 858, 860 (1965). The official statistics too are impressive; for example, fifty-six percent of all prostitution-related offenses were found to have been committed by drug users.[2]

Appellants also contend that their conviction should be reversed on the holding in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). It is claimed that they are being punished solely for their "status" as vagrants.

The statute in *Robinson* stated that "No person shall use, or be under the influence of, or be *addicted to* the use of narcotics * * *" Ibid. The Supreme Court said:

> This statute, therefore, is not one which punishes a person for the *use* of narcotics, for their purchase, sale or possession, or for *antisocial* or disorderly behavior resulting from their administration. * * * Rather, we deal with a statute which makes the "status" of narcotic addiction a criminal offense * *. Id. at 666, 82 S.Ct. at 1420. (Emphasis supplied.)

*Robinson* objected to the words "be addicted to" but did not condemn the remainder of the statute. Thus it would seem that narcotic addiction (as well as chronic alcoholism)[3] is a status which results primarily from dependence on a potentially dangerous material. It becomes physiological as well as psychological. *Robinson* did not criticize the status of being a violator of a given criminal statute. Carried to an

---

2. Report of the President's Commission on Crime in the District of Columbia 564 (1966).

3. Easter v. District of Columbia, 124 U.S. App.D.C. 33, 361 F.2d 50 (1966).

illogical extreme, all crimes could be excused as manifesting a status or condition. Analogous to appellants here:

> It is appropriate to speak of an unlawful combination amounting to a conspiracy as being in the condition or "status" of a conspirator but it would be quite incorrect to add that he had not *done* anything.

> A *superficial* analysis might lead to the suggestion that one in prison for (unlawful possession of contraband) is being punished not for anything he has done, but for merely being a possessor. Perkins, The Vagrancy Concept, 9 Hastings L.J. 237, 254 (1958). (Emphasis supplied.)

*Robinson* noted that "drug addiction is more prevalent in this country than in any other nation of the western world." (Footnotes omitted.) Id. at 669, 82 S.Ct. at 1422. Thus, " * * * the range of valid choice which a State might make in this area (to control narcotics) is undoubtedly a wide one, and the wisdom of any particular choice within the allowable spectrum is not for us to decide." Id. at 665, 82 S.Ct. at 1420.

We have earlier resolved the issue of cruel and unusual punishment and found it lacking in merit. Wilson v. United States, D.C.App., 212 A.2d 805, reversed on other grounds, 366 F.2d 666 (D.C.Cir. 1966); Rucker v. United States, D.C.App., 212 A.2d 766 (1965). See Castle v. United States, 120 U.S.App.D.C. 398, 401, 347 F.2d 492, 495, cert. denied, 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687 (1965).

### IV

Appellants assert that by using unemployment and poverty as elements or criteria of crime, they are denied equal protection of the laws in violation of the Fifth Amendment. We agree that indigence " * * * is a neutral fact—constitu-

tionally an irrelevance, like race, creed, or color." Jackson, J. concurring in Edwards v. People of State of California, 314 U.S. 160, 185, 62 S.Ct. 164, 172, 86 L.Ed. 119 (1941). Neither do we understand " * * * how economic or social status can be made a crime * * *." Douglas, J. dissenting from dismissal of writ of cert. in Hicks v. District of Columbia, 383 U.S. 252, 257, 86 S.Ct. 798, 800, 15 L.Ed.2d 744 (1966). Manifestly a neutral fact or status, in concert with certain physical acts, can become criminal.[4]

### V

Appellants complain that the statutes in question condone or encourage arrest for suspicion in violation of the Constitutional mandates that arrests must be predicated on probable cause and due process of law.

We agree that the purpose of the statutes "is to prevent crimes which may likely flow from his (the vagrant's) mode of life." District of Columbia v. Hunt, 82 U.S.App.D.C. 159, 161, 163 F.2d 833, 835 (1947). This reflects a legitimate legislative purpose. The statute prohibiting the carrying of a dangerous weapon without a license, D.C.Code 1961, § 22–3204, is preventive in nature; the purpose of the statute is to prevent crimes with the use of such weapons.

We must reject the contention that the arrests in these cases were on suspicion alone. The statutes clearly spell out behavior which, in itself, is criminal. Police officers are allowed within sensible limits to question people on the streets. Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976 (1966); White v. United States, D.C.App., 222 A.2d 843 (1966). And a good account may be expected to ensue from such questioning. Kelley v. United States, 111 U.S.App.D.C. 396, 397, 298 F.2d 310, 311 (1961). The citizen who is on the streets for a legal and legitimate

4. Status as a pacifist is constitutionally neutral but when coupled with a wilful failure to register for the draft, it becomes criminal.

purpose will have no difficulty in responding to such inquiries by the police and in giving a good account of his reasons and actions. But when an individual is unable to give a good account; when he is wandering at late and unusual hours and is associated with criminals or narcotics users and is not lawfully employed; these factors, together with those earlier enumerated, constitute probable cause for arrest.

■ Throughout their argument appellants assail their convictions on the grounds that the challenged statutes require a lesser quantum of proof to convict and are essentially "catch-alls" which are used when other crimes cannot be proven. Quantum of proof certainly varies with the crime alleged. Some crimes are simply less complex than others. As to the catch-all argument, it is unfortunate that the police force is undermanned [5] and probably under-equipped. This does not justify oppressive or illegal arrests but it does allow some discretion as to what kind of crime will be charged. Uncooperative witnesses [6] as well as the time consuming use of undercover agents are but two factors which compel this. By analogy, the standards urged by appellants would seem to require a policeman who knows an individual is carrying a dangerous weapon to follow him until a crime was actually attempted with it.

## VI

Finally, appellants allege that the vagrancy statutes are unconstitutionally vague thereby providing insufficient guidance to citizens, the police and the courts in violation of the Due Process Clause of the Fifth Amendment.

■ The word "loitering" is not vague. Walker v. District of Columbia, D.C.App., 196 A.2d 92 (1963). This is particularly true in the case at hand, where additional

conditions are necessary to constitute the offense. Shuttlesworth v. City of Birmingham, 382 U.S. 87, 91, 86 S.Ct. 211, 15 L.Ed. 2d 176 (1965).

"Leading an immoral and profligate life" [6a] is not unconstitutionally vague:

Those words were defined in a general way by this court in Davenport v. District of Columbia, D.C.Mun.App., 61 A.2d 486. * * * We note, however, that, because of what Mr. Justice Frankfurter referred to as the "intrinsic difficulties of language," a certain amount of imprecision is inherent whenever words are employed. * * * (A)ll that is required is a reasonable decree of certainty. (Footnotes and citations omitted.) Hicks v. District of Columbia, D.C.App., 197 A.2d 154, 155 (1964), pet. for cert. dismissed, 383 U.S. 252, 86 S.Ct. 798, 15 L.Ed.2d 744 (1966).

■ "Failure to give a good account" restricts rather than enlarges the application of the statutes. It allows a suspected vagrant to dissipate probable cause by satisfactorily explaining his conduct. People v. Merolla, 9 N.Y.2d 62, 211 N.Y.S.2d 155, 160, 172 N.E.2d 541, 545, cert. denied, 365 U.S. 872, 81 S.Ct. 906, 5 L.Ed.2d 861 (1961). The arresting officer is not the only one who must evaluate the account given. "The policeman does not determine the guilt or innocence in cases of this kind any more than he does in arresting a person for any other offense alleged to have been committed in his presence." City of Portland v. Goodwin, 187 Or. 409, 210 P.2d 577, 584 (1949). Justice will not perish if a man is required to give an account of himself in circumstances like these.

■ Appellants also contend that the word "vagrancy" itself is vague and cite Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) for that proposition. *Lanzetta* proscribed a

---

5. Report on the Metropolitan Police Department (President's Commission on Crime in the District of Columbia) 18 (1966).

6. The testimony indicated that two potential witnesses as to Ricks' alleged prostitution were unwilling to testify.

6a. D.C.Code 1961, § 22–3302(3).

statute making it unlawful to be a member of a "gang." The Court said:

> The phrase "consisting of two or more persons" is all that purports to define "gang". The meanings of that word indicated in dictionaries and in historical and sociological writings are numerous and varied. Nor is the meaning derivable from the common law, for neither in that field nor anywhere in the language of the law is there definition of the word. Our attention has not been called to, and we are unable to find, any other statute attempting to make it criminal to be a member of a "gang." (Footnotes omitted.) Id. at 453–455, 59 S.Ct. at 619.

Our statutes delineate with specificity what vagrancy is. The definitions within the various subsections are neither numerous nor varied; nor are they susceptible to widely divergent interpretations. The meaning and origin of vagrancy is deeply rooted in the common law and, like many criminal concepts, has undergone some evolution in meaning.[7] Finally, vagrancy statutes abound in the laws of the states.[8]

■ The statutes in question, despite some imprecision of language, clearly fall within the ambit of understandable prohibition. With regard to certainty and vagueness in statutory language:

> The precise point of differentiation in some instances is not easy of statement; but it will be enough for present purposes to say generally that the decisions of the court, upholding statutes as sufficiently certain, rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, or a well-settled common-law meaning, notwithstanding an element of degree in the

definition as to which estimates might differ. (Citations omitted.) Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

Nor do we have a "crime of such nebulous amplitude that no person could know how to defend himself." Edelman v. People of State of California, 344 U.S. 357, 365, 73 S.Ct. 293, 298, 97 L.Ed. 387 (1953) (Black, J., dissenting).

In Hicks v. District of Columbia, supra, we discussed the strong presumption of constitutionality which attaches to these and all Acts of Congress. We find no persuasive reason to overrule a substantial, long-established and thoughtfully considered line of decisions.

Affirmed.

---

7. For historical discussions see Rosenheim, Vagrancy Concepts in Welfare Law, 54 Calif.Law Rev. 511 (1966) and The Vagrancy Concept Reconsidered: Problems and Abuses in Status Criminality, 37 N.Y. U.Law Rev. 102 (1962).

8. See Lacey, Vagrancy and Other Crimes of Personal Condition, 66 Harv.Law Rev. 1203, 1207 (1953).