**UNITED STATES, Appellant,**

v.

**Michael C. McCLOUGH, Leon E. Tyler, Appellees.**

**UNITED STATES, Appellant,**

v.

**John W. PARKS, Appellee.**

**UNITED STATES, Appellant,**

v.

**Michael C. McCLOUGH, Appellee.**

**Nos. 4930, 4952 and 4953.**

District of Columbia Court of Appeals.

Argued Sept. 8, 1969.

Reargued Jan. 8, 1970.

Decided March 13, 1970.

**50**

———◆———

Daniel E. Toomey, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Henry F. Greene, Gregory C. Brady, Lawrence S. Margolis, Richard N. Stuckey, and John A. Terry, Asst. U. S. Attys., were on the brief, for appellant.

Sanford Z. Berman, Riverdale, Md., for appellee McClough. David Lamb, Bethesda, Md., for appellee Tyler. Nicholas L. Ruggieri, Bethesda, Md., was on the brief for appellees.

Before HOOD, Chief Judge, and KERN and GALLAGHER, Associate Judges.*

KERN, Associate Judge.

Appellees McClough and Tyler were charged with being present in an establishment at 1207–6½ Street, N.W., where they knew narcotic drugs were being dispensed, in violation of D.C.Code 1967, § 22–1515 (a) (hereinafter referred to as PIE).[1]

Appellees McClough and Parks were charged on an information with narcotics vagrancy in that they were found in a private residence in which narcotic drugs were kept and they were drug users or had prior convictions of narcotics offenses, in violation of D.C.Code 1967, § 33–416a(b) (1) (B) (hereinafter referred to as PAD).[2]

The Government appeals from various pre-trial orders dismissing the informations against all the appellees on the ground that PIE and PAD are unconstitutional.

### I. Section 22–1515(a) (PIE)

The trial judge granted appellees' motions to dismiss the PIE charge without

---

\* This case was originally argued before a panel consisting of Chief Judge Hood, and Associate Judges Kern and Gallagher. Thereafter, the court sua sponte ordered a reargument before the court en banc limited to the issues of the lack of a knowledge requirement and associated problems of unconstitutionality surrounding D.C. Code 1967, § 33–416a(b) (1) (B), discussed in Section II of this opinion. Brooks v. United States, No. 4982, was consolidated with this case for the purpose of argument en banc on these same issues but will be decided in a separate opinion. Only the original panel heard and decided that part of the case concerning D.C.Code 1967, § 22–1515(a), appearing in Section I. Associate Judge Nebeker did not participate in this case.

1. This section provides in pertinent part:
Whoever is found in the District in a gambling establishment or an establish-

ment where intoxicating liquor is sold without a license or any narcotic drug is sold, administered, or dispensed without a license shall, if he knew that it was such an establishment and if he is unable to give a good account of his presence in the establishment, be imprisoned * * *.

2. This section provides in pertinent part:
[A]ny person who is a narcotic drug user or who has been convicted of a narcotic offense in the District of Columbia or elsewhere and who—
(B) is found in any place, abode, house, shed, dwelling, building, structure, vehicle, conveyance, or boat, in which any illicit narcotic drugs are kept, found, used, or dispensed * * *.

opinion, but in a previous hearing involving another defendant, he ruled that PIE was unconstitutional for vagueness, by virtue of the "unable to give a good account of his presence" clause in the statute.[3] The trial court felt compelled to reach such conclusion by the decision in Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968) (hereinafter referred to as *Ricks I.*).

■ It is clearly established that in order to meet the requirements of due process, "[a] criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation." Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

The United States Court of Appeals, in *Ricks I*, 414 F.2d at 1100, ruled that sections (1), (3), and (8) of the General Vagrancy law, D.C.Code 1967, § 22–3302 (1), (3), and (8) [4] were unconstitutionally vague because of a failure "to provide a reasonable degree of guidance to citizens, the police and the courts as to just what constitutes the offenses" proscribed thereunder. In considering section (1), the court focused on the lack of specificity in the use of the word "loitering" and the phrase "not giving a good account of himself." Loitering is a term devoid of con-

crete meaning; thus, the court viewed section (1) as "licensing one's presence on a public street upon a police officer's * * satisfaction with the explanation as to why the person is there." *Ricks I*, 414 F.2d at 1105–1106. The range of possible reasons that a person could give for being in one of the places enumerated in section (1) is limitless.

In addition, the requirement that one give a "good account" plays a central role in the definition of the crime created by section (1); without it, the conduct described could never be constitutionally punished. In United States v. Margeson, 259 F.Supp. 256 (E.D.Pa.1966), cited by appellees, the District Court found unconstitutionally vague a statute which essentially made it a crime to be unable to "give a good account". Thus, in both *Ricks I* and *Margeson*, "good account" was used in statutes which failed to suggest a more concrete standard for judging the lawfulness of the defendant's explanation than that provided by the term itself.

■ However, "the clarity and certainty necessary to satisfy constitutional requirements may be acquired * * * by reference to the context in which the term is used." People v. Merolla, 9 N.Y.2d 62, 211 N.Y.S.2d 155, 172 N.E.2d 541, cert. denied, 365 U.S. 872, 81 S.Ct. 906, 5 L.Ed.2d 861 (1961) (upholding a "good account" clause in a dock-loitering statute). The essential conduct condemned by PIE is knowing presence in an illegal establish-

---

3. Appellees add the contention that the term, "narcotic drug" as used in PIE is vague because it is not specifically defined therein and is variously defined in different federal statutes. However, the record does not indicate that drugs of questionable status as "narcotics" were involved here, and hence we decline to speculate on whether the various items mentioned in appellees' brief are "narcotics".

4. These sections provide:
   (1) Any person known to be a * * * felon * * * having no lawful employment and having no lawful means of support realized from a lawful occupation or

source, and not giving a good account of himself when found loitering around in any park, highway, public building, or other public place, store, shop, or reservation, or at any public gathering or assembly.
   (3) Any person leading an immoral or profligate life who has no lawful employment and who has no lawful means of support realized from a lawful occupation of source.
   (8) Any person who wanders about the streets at late or unusual hours of the night without any visible or lawful business and not giving a good account of himself.

ment. In that context, "good account" necessarily takes on a narrow meaning: demonstrating that one's knowing presence in the illegal establishment was for a lawful purpose and not as a participant in the illegal activity taking place there. The guesswork entailed in its application to loitering cited in *Ricks I*, 414 F.2d at 1104–1105, would not be present here. Moreover, it does far more violence to one's right to be free from criminal prosecution to condition on "good account" his standing on. a street corner than his presence in an illegal establishment; the latter is not presumptively innocent behavior.

Lastly, the "requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the [statute] would be so unfair [for vagueness] that it must be held invalid." Boyce Motor Lines v. United States, 342 U.S. at 342, 72 S.Ct. at 332; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945).

The *Margeson* case relied upon by appellees may also be distinguished in that it arose in a prosecution for conspiracy and bank robbery on a motion to suppress evidence seized *incident to* an arrest under the New Jersey "good account" statute. In such a setting, the "good account" statute was susceptible to being used as a device for obtaining evidence of major crimes from a minor violation. Moreover, since the issue of guilt on the "good account" violation is never determined by a jury or judge when used in another criminal prosecution to show probable cause for the arrest and subsequent search, the reviewing court has before it only the police officer's suppositions about the meaning of "good account."

█ In contrast, when the instant case comes to trial, the defendant will have the opportunity to persuade the jury that his

explanation to the police and .any additional explanation he might make to them [5] sufficiently provide a legitimate reason for his knowing presence in the illegal establishment.

Appellees further contend that the "good account" clause results in an unconstitutional abridgment of their privilege against self-incrimination. They argue (Br. at 14–15) that

anyone who is knowingly in a place where * * * narcotic drugs are sold, administered or dispensed without a license, and is confronted by the police, is faced with the following trilema: (1) he can try to account for such presence at the risk of incriminating himself by failing to give a "good account" to the police officer; (2) he can say nothing and by his silence fail to give a "good account," or (3) affirmatively invoke the Fifth Amendment and by such invocation fail to give a "good account".

█ Certainly, the Government can impose no burdens upon an accused's right to remain silent, either by using that silence as the basis for removal from office, Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L. Ed. 692 (1956), disbarment, Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), or comment to the jury as an indication of guilt, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). It would seem equally clear that such silence could not be made a crime, *see* Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), or element of an offense. To do so would be the imposition of a sanction tending to make the assertion of the privilege

---

5. *See* Judge Korman's oral opinion in United States v. Bailey, D.C.General Sessions No. 926–'269 BCD (Feb. 7, 1969), consolidated with United States v. Salley, No. 927–'69 AB, transcript at 33.

"costly". *Spevack*, 385 U.S. at 515, 87 S. Ct. 625.

On the other hand, a defendant cannot rely upon the fifth amendment to mitigate the effect of his failure to testify to prove a matter in the nature of an affirmative defense. He may be called upon to explain sinister behavior, or bear the consequences of whatever inferences the jury may draw from that behavior, or whatever rational presumptions the law specifies. *See* Leary v. United States, 395 U.S. 6, 32–36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

■ If a "good account" clause is used to describe an element of the crime, which would be its function in a statute making it a crime "to fail to give a good account of oneself to a police officer whenever asked",[6] then the accused's silence, or his coerced suspicious statements, would supply the lack of "good account" essential to the Government's prosecution. However, we construe the "good account" clause in PIE as merely establishing an affirmative defense to the otherwise completed crime of knowingly being present in an illegal establishment.

First, it is unnecessary to construe it as an element of the crime here since in its absence the statute still describes a crime in a manner that would survive an attack based on unconstitutional vagueness. Second, the "good account" clause is not used here to create a presumption of knowledge on the part of the defendant of the illegality of the premises in which he is present since knowledge is a *separate* element of the crime which the Government must prove. Third, the "good account" clause does not create a presumption of any other element of the crime.[7] Instead, the good account clause in PIE is used in much the same way as the term "satisfactorily to account" is used in Section 22–3601, which makes it a crime for a person to "have in his possession in the District any instrument, tool, or other implement for picking locks or pockets, or that is usually employed, or reasonably may be employed in the commission of any crime, if he is unable satisfactorily to account for the possession of the implement."

■ This court said in Johnson v. United States, D.C.App., 255 A.2d 494, 496 (1969), that Section 22–3601 "recognizes that articles giving rise to sinister implications may be legally possessed, and that proof of possession for a legal purpose constitutes a valid defense." Here, the PIE statute establishes a defense in the event that one could have a lawful purpose in knowingly frequenting an illegal establishment. If defendant chooses not to attempt to establish a defense of "good account", he in no way lessens the Government burden of proving his knowing presence in an illegal establishment, nor does he expose himself to added criminal responsibility. Thus, Section 22-1515 does not run counter to the privilege against self-incrimination of the fifth amendment.

Appellees' last contention is that PIE is an attempt to create a crime of status by punishing one (a) for *presence* in an illegal establishment rather than for an affirmative *act* or, (b) upon a suspicion of propensity for *future crime* by being present in an illegal establishment. It might also be argued that criminal prosecution of those present where narcotics are being used or sold is an indirect attempt to circumvent the ruling in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), that it is cruel and unusual punishment to make a crime out of addiction to narcotics. However, the court in *Robinson* carefully noted that the opinion did not

6. This construction is essentially that given to the New Jersey statute in *Margeson* and Section 22–3302(1) in *Ricks I*.

7. For an example of failure to give good account as creating a presumption of an independent element of a crime, *see* United States v. Margeson, *supra;* United States v. Romano, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

**54**

extend to laws covering the use of narcotics within local jurisdictions, or to those statutes regulating the sale and manufacture of narcotics. *See also* Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968).

■■■ The purpose of Congress in enacting PIE was to lead to the eradication of illegal establishments by making presence or employment [8] therein a crime. An illegal narcotics establishment is not merely a place where addicts may be present, but it is also a place where pushers, addicts, and unaddicted neophytes can easily transact business. Elimination of such an obvious and specific catalyst for illicit narcotics traffic is a proper subject for Congressional action and PIE's effect on the *status* of being addicted to narcotics is merely incidental to its major thrust against narcotics traffic.[9]

Thus, we conclude that the trial court erred in ruling the PIE statute, Section 22–1515(a), unconstitutional, and we remand this case for reinstatement of the informations against appellees in Number 4930.[10]

II  Section 33–416a(b) (1) (B) (PAD)

The trial judge, in a written opinion relying heavily on *Ricks I* and on Ricks v. United States, 134 U.S.App.D.C. 215, 414 F.2d 1111 (1968) (hereinafter referred to as *Ricks II*), dismissed for unconstitutional vagueness the informations charging appellees with violations of PAD.

PAD as written does not specifically require *knowledge* by the defendant that he is in a "place" within which narcotics

are "kept, found, used, or dispensed." Thus, appellees argue, a person who has been convicted of a narcotic offense or is a drug user could never be sure if his presence in *any* edifice was criminal, since there would always be a possibility that narcotics could be concealed somewhere in the edifice without his knowledge.

■■■ We agree with appellees that without a knowledge requirement PAD fails to provide sufficient notice so that one may conform his conduct to the dictates of the law. Therefore, PAD, if construed literally, would violate the Due Process Clause of the fifth amendment. The Government concedes this point but argues that a *scienter* requirement should be read into the statute. However, during the reargument en banc, appellees took the position that construing the statute to require knowledge on the part of a defendant was contrary to the intent of Congress. The fact that a *scienter* provision is absent from PAD does not necessarily evince a Congressional intent to make PAD a strict liability offense. The available legislative history is not helpful. In Harris v. United States, D.C. Mun.App., 162 A.2d 503, 505 (1960), we held that *scienter* is not a requisite element of the crime under PAD:

The stated purpose of the act is the protection of the public and not the punishment of offenders. It is therefore a legislative exercise of the police power aimed at social betterment * * *. In this type of police regulation it is now too settled to doubt that the legislature may dispense with intent as an element of criminal liability when the regu-

---

8. D.C.Code 1967, § 22–1515(b).

9. This conclusion applies equally to PAD, Section II *infra*.

10. It has been argued to us that the final paragraph in the *Ricks I* opinion announces in advance that the Circuit Court will void any other section of the narcotics vagrancy legislation coming before it. We feel, however, that PIE and PAD are sufficiently distinguishable from the

sections dealt with in *Ricks I* and *II* to allow us to uphold them and yet remain faithful to those decisions. Further, it is our responsibility to decide those cases that come before us, and not feel bound by what is conceded in *Ricks I* to have been dictum. Lastly, it appears to us that the paragraph in question was designed to ward off possible citation of *Ricks I* as a *sub silentio* upholding of those vagrancy sections not then before the court; this we have scrupulously avoided doing.

lation is in the exercise of the police power for the benefit of the people.

■■■ Legislatures have frequently established absolute criminal liability in certain classes of social welfare regulation, such as workers' safety, traffic, health, food and drug purity, and others "which heighten the duties of those in control of particular industries, trades, properties or activities that affect public health, safety or welfare." Morissette v. United States, 342 U.S. 246, 254, 72 S.Ct. 240, 245, 96 L.Ed. 288 (1952). However, after a reconsideration of *Harris* en banc, we now conclude that PAD is in large part designed to punish participants in narcotics traffic, and that it does not fit into those classes of absolute crimes enumerated in *Morissette*. We therefore do not feel compelled to assign special significance to the omission by Congress from PAD of an explicit knowledge requirement. In exercising their duty to construe acts of Congress whenever possible in a manner favoring constitutionality, courts have frequently read knowledge requirements into statutes where not precluded from doing so by a clear, contrary legislative directive. *E. g.,* Morissette v. United States, *supra;* Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Benton v. United States, 98 U.S.App.D.C. 84, 232 F.2d 341 (1956).

We believe that by construing PAD to require knowledge on the part of the defendant of the presence of narcotic drugs [11] in the place where he is, the statute can be constitutionally upheld. Therefore, to that extent, we overrule our prior holding in Harris v. United States, *supra.*

■■■ Appellees argue that the statutory phrase "found in *any* place * * * building, structure * * * in which any illicit narcotic drugs are kept" is so vague

and broad as to unconstitutionally inhibit the constitutional right of assembly and freedom of movement. The burden put upon prior narcotics offenders and users of absenting themselves from places where they know narcotics are kept or used is not an impermissible deprivation of their freedom of movement. It is a rational means of curbing the recognized evils flowing from narcotic traffic. *See* PIE section, p. 54 *supra.* We also believe it reasonable for Congress to single out narcotics users for prosecution under PAD, as those most likely to be engaged in illicit narcotics traffic. *Cf.* D.C.Code 1967, § 22–3203 (addicts and ex-felons prohibited from possessing a pistol in their homes, while generally such possession is legal).

■■■ Finally, it may be argued that a prosecution could be instituted under the language of PAD against a drug user or a previous narcotics offender who might be innocently in a "building", in one apartment of a large apartment house, and know that narcotics could quite probably be found in some other apartment within that "building". It is hardly necessary to point out that prosecuting under those circumstances would not further legitimate governmental interests sufficiently to justify such a severe restriction of movement of those under the purview of PAD. Some rational connection must exist between the behavior to be punished under PAD and illegal narcotics traffic. Proof of knowledge of the presence of narcotics, which we shall henceforth require from the Government under our reading of PAD today, will usually take the form of an inference to be drawn from the defendant's proximity to or connection with the narcotics, thus making the above hypothesis unlikely to arise.[12] In any event, "[t]he delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases. * * * [A]

---

11. The term "narcotic drugs" as used in PAD is expressly defined elsewhere in Title 33 of the D.C.Code.

12. Appellees in this case were charged with being in a "private residense [sic]" wherein illicit narcotic drugs were "kept, found, used and dispensed."

limiting construction could be given to the statute by the court responsible for its construction if an application of doubtful constitutionality were in fact concretely presented." United States v. Raines, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960).

 In the present case, the information failed to allege knowledge on the part of appellees McClough and Parks of the presence of illicit narcotics in the residence in which narcotic drugs were found. We are required, therefore, under the rule we are announcing today to affirm the dismissal of the PAD charges in the trial court without prejudice.

Affirmed in part and reversed and remanded in part.