**Jacqueline JOHNSON, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 4254.**

District of Columbia Court of Appeals.

Argued April 24, 1967.

Decided June 13, 1967.

E. Barrett Prettyman, Jr., Washington, D. C., for appellant.

David P. Sutton, Asst. Corporation Counsel, with whom Charles T. Duncan, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for appellee.

Before HOOD, Chief Judge, MYERS, Associate Judge, and CAYTON (Chief Judge, Retired).

CAYTON, Judge.

Appellant was convicted under the Vagrancy Statute, D.C.Code 1961, § 22–3302 (1), (3) and (8) and has appealed. She challenges the constitutionality of the statute on eleven grounds which we need not detail here, in view of the disposition we are making of the appeal. But we note that six of such arguments were disapproved in Ricks v. United States, D.C.App., 228 A.2d 316 (1967). These matters were fully explored at the trial, and have been carefully briefed by assigned counsel who has brought the case here for review. However, we do not reach these questions because our study of the case satisfies us that the evidence was insufficient to establish guilt. We have raised the question *sua sponte*. See Townsley v. United States, D.C.App., 215 A.2d 482, 483 (1965).

According to the evidence the police followed the practice of making three "observations" of appellant. It was testified that the first occurred between 1:35 and 3:25 a. m. when appellant "approached several cars during this two hour period, would have a brief conversation with the subject, and leave." Occasionally during this period "she saw [the police and] she would leave and go into the carryout." Appellant provided the observing officers with her name, address, age and place of birth and stated that she was unemployed. She refused to answer questions as to whether she was a prostitute or a narcotics addict. There is no indication that she was asked "What are you doing here now." [1] The only evidence which could remotely be connected with guilt was that "she was standing on the street, she would hand (sic) out her hand, waving at a car, it would pull to the curb, and she would have a brief conversation with the driver. * * * [but] I don't think she got in."

Approximately three weeks later she was observed at 1:00 a. m. in a car with a man. When the police officer, in a car which was stopped in front of her, turned and saw her "* * * she jumped from the car, ran into a gas station and grabbed the keys to the ladies' room." When she emerged, she was questioned as in the first observation and gave the same answers. The officer "knew" she had "old needle marks" from the use of narcotics but he did not see them.

The third observation occurred a week later at 1:20 a. m. Appellant was observed stopping two cars, conversing with the occupants briefly and then walking away. At 3:20 the same morning, she stopped another car. The police pulled up and "she turned, observed us, and walked away." She was arrested in a nearby carry-out after she had ordered a cup of coffee. Again, her answers to the questions propounded by the police were the same as the first observa-

tion except that this time she stated she was attending the "Equal Opportunity School."

In all the observations appellant was sober, well-behaved and decently attired. Her convictions for vagrancy, disorderly conduct, petit larceny and solicitation were known to the officers and she admitted at least two of these convictions.

While the prosecution established the element of "late and unusual hours," there was no evidence per se of loitering. She was a "known thief" but the record is devoid of any evidence as to her reasons for being on the street. During two observations, she admitted that she was unemployed but her assertion at the third incident that she attended school was unrebutted. Flagging down automobiles could be construed as some evidence of soliciting in some circumstances but the scant testimony on this facet of the case is certainly compatible with innocent behavior. By similar reasoning, it cannot be concluded that she was without visible or lawful business.

Circumstantial evidence may sustain a vagrancy conviction " * * * but inferential proof of an ultimate fact may not be based upon mere possibility, speculation or conjecture." (Deborah) Baker v. District of Columbia, D.C.Mun.App., 184 A. 2d 198, 200 (1962). As we said in a recent case involving another vagrancy statute:

The circumstantial evidence, if more fully elaborated, could conceivably have sustained a conviction. But the testimony actually fell short of establishing guilt under the statute. (Norris) Baker v. United States, D.C.App., 228 A.2d 323 (1967).

"The vagrancy statute, because it defines a crime, must be construed narrowly in favor of the defendant." Harris v. District of Columbia, 102 U.S.App.D.C. 202, 203, 251

1. This question is described on the police vagrancy observation form as "the most important thing to ask" and is directly related to "giving a good account."

F.2d 913, 914 (1958). Under that rule of construction, it must be held that there was a failure of proof in this case.

Reversed, with instructions to enter a judgment of acquittal.